[No. 25725. Department Two. August 29, 1935.]

ELSIE FORMAN, *as Guardian ad Litem for William Forman, a Minor, Respondent,* v. CALHOUN SHIELDS *et al., Appellants.*[1]

[1]Reported in 48 P. (2d) 599.

334

*Ralph S. Pierce, Edwin J. Cummins,* and *Gordon H. Sweany,* for appellants.

*Welts & Welts* and *Verne Branigin,* for respondent.

BLAKE, J.—This is an action for personal injuries sustained by William Forman while riding in an automobile driven by defendant Gordon Shields and owned by his parents, the defendants Calhoun Shields and Ida Shields. The cause was tried to a jury, which returned a verdict against Gordon Shields and the community comprised of Calhoun Shields and Ida Shields. From judgment on the verdict, defendants appeal.

Counsel for the respective parties somewhat sharply disagree as to what the essential facts are, as shown by the record. Our examination of the record leads us to believe that the disagreement arises over inferences that may be drawn from the facts, rather than in the facts themselves. In any event, we think there was evidence which warranted the jury in taking the facts to be as hereinafter narrated.

Gordon Shields and William Forman were seniors at the Mount Vernon high school. For many years, it was the custom of the senior class to hold what they called the "senior sneak." This was a celebration which commenced in the morning with a parade in decorated automobiles through the streets to the high school. After congregating there, the class "sneaked" away for a picnic.

The 1934 class held its celebration on May 16, going to Lake Samish for the picnic. Prior to that day, Gordon Shields had obtained the consent of his father to the use of their car to take a group of boys to the picnic. Among them were William Forman, George Smith, Vernon Harris, and Errett Deck. The boys decorated the car the night before with a sign and streamers. Each of them contributed ten cents toward the decorations. It was also agreed that Forman, Smith and Deck each buy a gallon of gas. Harris was relieved of this obligation under the agreement that he

would furnish a car for the junior-senior picnic to be held later. The other three boys, however, never did carry out the agreement to buy gas. Forman's explanation of his failure to do so is that settlement was to have been made after the picnic; that he was prevented from carrying out the agreement by reason of injuries sustained in the accident.

There are two routes from Mount Vernon to Lake Samish. The shorter is over the Pacific highway to a point about two miles north of Burlington, thence over a gravel road to the north and east. The other route is over the Pacific highway and Chuckanut drive to a point at or near the southerly limits of Bellingham, thence over a gravel road to the lake. The former route is shorter, but entails traveling over a considerably longer gravel road than the route by Chuckanut drive. Both, however, were usual and ordinary routes between Mount Vernon and Lake Samish.

After the boys got to the picnic, they (with the exception of Errett Deck, who went home in another car) decided to go into Bellingham for a picture show before returning to Mount Vernon. Accordingly, they left the picnic about four o'clock. Having attended the show, they started for Mount Vernon by way of Chuckanut drive and the Pacific highway. Some miles south of Bellingham, a paved highway called the "Cook road" branches off to the east toward Sedro-Woolley. As the Shields car approached this point, it was following a car owned by Ray Beaman. As the Shields car, traveling between forty and forty-five miles an hour, pulled up to pass, the Beaman car turned to the left as though to go down the Cook road. Beaman testified that, before turning, he held out his hand to indicate his intention of turning into the Cook road. In order to avoid a collision, Gordon also turned to the left and down the Cook road. At the same time,

the Beaman car turned back and pursued a course down the east side of the Pacific highway. The Shields car ran along the dirt shoulder of the Cook road for some distance, then, leaving the road, it ran into an embankment, where it turned over on its side. The embankment was one hundred fifty-eight feet from the pavement intersection.

■ Appellants make fifteen assignments of error. We shall discuss these generally with respect to the contentions made. The first to be noticed is that the action is, in all events, barred by chapter 18, Laws of 1933, p. 145, § 1 (Rem. 1935 Sup., § 6297-1), which provides:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee without payment for such transportation shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator."

It is to be observed that this section does not purport to bar recovery by any but invited guests or licensees. It is obviously not designed to affect the liability of the owner or operator of an automobile to anyone standing in any other relationship. So, if Forman did not stand in the relationship of an invited guest or licensee to Gordon Shields, the statute does not bar his cause of action. The trial court submitted to the jury the question of their relationship, under instructions defining joint venture and the effect of the statute.

■ As to Gordon's want of reasonable care, there can be no question that respondent made a case for the jury. There was evidence that he was driving in excess of forty miles an hour; that he failed to sound the horn; and that, after the emergency arose, he could have stopped the car before it hit the embankment.

Appellants contend that the facts are insufficient to sustain the verdict on the theory of joint venture. In *Rosenstrom v. North Bend Stage Line*, 154 Wash. 57, 280 Pac. 932, this court said:

"The authorities have not laid down any very certain rule from which it can be determined whether the given acts or conduct of two or more persons will or will not constitute them joint adventurers, but have rather contented themselves with a consideration of the particular facts of the case before them. There are, however, certain general principles connected with the relation which have received recognition. The relation, as a legal concept cognizable by the courts, must have its origin in contract.

"There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance. One or more of the parties may, of course, intrust performance to another or others, but this involves only the law of agency; his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same."

As this rule has been applied in numerous cases, the facts we have stated made a case for the jury. *Jensen v. Chicago, Milwaukee & St. Paul R. Co.*, 133 Wash. 208, 233 Pac. 635; *O'Brien v. Woldson*, 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436; *Lloyd v. Mowery*, 158 Wash. 341, 290 Pac. 710; *White v. Stanley*, 169 Wash. 342, 13 P. (2d) 457; *Bates v. Tirk*, 177 Wash. 286, 31 P. (2d) 525; *Pickering v. Stearns*, 182 Wash. 234, 46 P. (2d) 394.

Appellants contend especially that, under the facts in this case, the element of joint control or equal voice in the enterprise is absent. As we understand it, the contention is predicated on the theory that joint con-

trol of the instrumentality used in the joint enterprise must be present at the moment of the negligent act. This contention is incompatible with a vital part of the rule stated in the *Rosenstrom* case: "One or more of the parties may, of course, intrust performance to another or others . . ." Furthermore, this contention was raised in *Jensen v. Chicago, Milwaukee & St. Paul R. Co., supra,* and was disposed of in the following language:

"The objection to the instruction appears to be that it does not embody the thought that, at the time of the accident, the negligence of Sonnabend could not be imputed to Jensen unless at that time Jensen had authority and control over the driver of the automobile in the matter in which the driver was negligent. That is the rule when the question of the relationship is master and servant or principal and agent, but it is not the rule with reference to a joint enterprise or a community of interest."

Appellants contend that there is no liability on the part of Calhoun Shields and Ida Shields, notwithstanding the liability of Gordon Shields. The case against them was submitted to the jury in three aspects: (1) Under the family use doctrine; (2) defective condition of the car; (3) inexperience of Gordon as a driver.

With respect to the family use doctrine, appellants take the position that Gordon had no authority to enter into a contract of joint venture with the other boys; that Calhoun Shields and Ida Shields were in no sense parties to the joint venture, and cannot be subjected to liability arising out of it. They say that the relationship between them and Forman was that of host and guest. There was, however, positive testimony to the effect that plans for the trip were discussed in the presence of Calhoun Shields, and that he was present when the car was being decorated. While

there is no direct evidence that he knew of the arrangement for buying gas, it is a fair inference from all the evidence that he understood the arrangement. Under the evidence, the jury was warranted in finding that Calhoun Shields was fully apprised of the object of the trip and the terms under which it was to be made. The evidence was sufficient to justify the jury in finding that, at the time of the accident, the car was in use for an authorized family purpose. *Lloyd v. Mowery, supra.*

But, say appellants, Gordon had authority to make only the trip to Lake Samish and return; that he had no authority to go to Bellingham. This is true. But the accident did not occur on the detour. It occurred when the boys were traveling one of the two usual routes between Mount Vernon and Lake Samish. Gordon was therefore acting within the scope of his authority at the time of the accident. 42 C. J. 1112. See *Bates v. Tirk, supra.* The facts do not bring the case within the rule of *Schnebly v. Bryson*, 158 Wash. 250, 290 Pac. 849.

Appellants complain of the court's refusal to give certain portions of their requested instructions 12 and 14. The court instructed the jury with respect to the elements required to establish a joint venture. The omitted portions of the requested instructions were to the effect that, if the jury did not find such elements present, their verdict should be for appellants. These portions of the instructions were argumentative in form and substance, and were properly refused.

With respect to the defective condition of the car, it was shown that, during the parade, the horn failed to work part of the time. There was also evidence that the horn was not sounded as Gordon drew

up to pass the Beaman car. The car had been driven 58,000 miles. The brakes had been relined but twice. After the emergency, created by the Beaman car's turn to the left, arose, the Shields car traveled nearly two hundred feet. There was evidence to the effect that a car of the same model, in good condition, in the hands of an experienced driver, traveling at a speed of forty-five miles per hour, under similar conditions, could be stopped in a much less distance. Under the evidence, it was for the jury to say whether the car was in a defective condition and whether Calhoun Shields and Ida Shields were negligent in permitting the boys to use it. *Bruner v. Little,* 97 Wash. 319, 166 Pac. 1166; *Eastman v. Silva,* 156 Wash. 613, 287 Pac. 656; *Trunk v. Wilkes,* 162 Wash. 114, 297 Pac. 1091.

Likewise, there was sufficient evidence to justify submission to the jury of the question of negligence in intrusting the car to so inexperienced a driver as Gordon. He was seventeen years old. He had not, with the exception of two occasions, been permitted to drive a car alone. Calhoun Shields' deposition was taken prior to trial. At the trial, on cross-examination, he testified as follows:

"Q. I then asked you, 'Didn't he drive it several times the week of this accident around town?' and you answered, 'No, not without someone with him, someone to supervise his driving.' That is true, isn't it? A. Practically—not entirely. Q. So that when it comes right down to cases this was practically the first time that Gordon had been entrusted alone to take this car with others in it, that is right, isn't it? A. Not practically the first time. Q. There had been one or two or three other occasions, isn't that about it? A. I think there had been more than that. Q. You said that he did not drive the car without someone along to supervise him before this, at least not very often, whether he had been entrusted with it or not it wasn't

very frequently? A. There was no diary kept of it. Q. That is the way you wish to leave it now? A. Yes."

Under the rule of *Mitchell v. Churches*, 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132; *Jones v. Harris*, 122 Wash. 69, 210 Pac. 22; *Smith v. Nealey*, 162 Wash. 160, 298 Pac. 345, the showing was sufficient to take the case to the jury on this charge of negligence.

Judgment affirmed.

MITCHELL, HOLCOMB, and STEINERT, JJ., concur.

