[S. F. No. 16266. In Bank.—November 27, 1939.]

EDWARD NEBELUNG, Jr., et al., Respondents, v. A. G. NORMAN et al., Defendants; LAHER SPRING & TIRE CORPORATION (a Corporation), Appellants.

Frank V. Campbell, Walter E. Rankin and Robert E. Hayes for Appellant.

Bohnett, Hill, Cottrell & Boccardo and James F. Boccardo for Respondents.

THE COURT.—After further consideration of this cause, we find ourselves in accord with the opinion of the District Court of Appeal as prepared by Mr. Justice Spence of the First District, Division Two, and we hereby adopt the same as the opinion of this court. It is as follows:

"The three plaintiffs brought this action seeking to recover damages for personal injuries sustained by them in an automobile accident. The cause was tried by the court sitting without a jury and a judgment was entered in favor of plaintiffs and against defendant, Laher Spring & Tire Corporation. By said judgment, plaintiffs Nebelung and Mucia were awarded the sum of $500 each, while plaintiff Virnig was awarded the sum of $7,500. Said defendant's motion for new trial was not ruled upon within the time prescribed and was therefore denied by operation of law. Said defendant appeals from the judgment.

"The defendant Laher. Spring & Tire Corporation, hereinafter referred to as the defendant, was in the business of buying used automobile tires, removing the old tread and replacing it with new, and selling said tires as 'retreads' or 'remolds'. In 1936, they sold some retreads to a dealer named Gilbert, who, in turn, sold one of said retreads to plaintiff Nebelung. Shortly thereafter said plaintiff placed said retread on the right rear wheel of his automobile and, after traveling about 60 miles thereon, said tire disintegrated while the car. was being driven with the three plaintiffs riding therein. The new tread became completely detached from the casing or carcass of the tire, causing the car to swerve out of control and to run off the highway with the resulting injuries to plaintiffs.

"It is conceded by defendant that defendant manufactured the tire involved and that there is substantial evidence to show that said tire came out of the mold with a defect known as a 'mold-pinch' or 'buckle'. This caused an indentation on the inner side of the tire for about one-third of its circumference, which indentation was filled by defendant with rubber cement. While defendant lays some stress upon the fact that said tire was sold to Gilbert as a 'second' rather than as a 'first', it appears from the evidence of defendant's own witnesses that the designation 'second' merely denotes with the trade some minor irregularity such as an irregularity of the knobs of the tread. One of defendant's witnesses gave the following answers to the questions propounded: 'Q. And the only difference between a first and a second is the looks of the tread? A. Yes. Q. The real qualities are the same, the wearing quality? A. Yes, they test along the same as the others. Q. Your firsts and seconds as far as the tread sticking to the carcass is concerned should be the same? A. Yes. Q. And you wouldn't expect the tread on a second to come off any sooner than you would of first? A. Absolutely not.' We may therefore treat the fact that the tire was sold as a second as wholly immaterial in this discussion.

"The casing and tread were introduced in evidence as well as photographs of both. Experts were called by both parties to give their opinions with respect thereto. Said evidence was ample to show that defendant was chargeable with negligence in several respects in the manufacture of

the retread tire in question. We need only point to the evidence showing that defendant had failed to remove the breaker strips from the tire before applying the new tread and had failed to take proper precautions to avoid the mold-pinch in applying the new tread. It appears that the failure of defendant in the foregoing respects prevented proper adhesion between the new tread and the casing and that experiments had shown that such defects invariably cause a new tread to loosen and to separate from the casing when the tire is put in service. We do not understand that defendant's experts seriously questioned the existence of said defects or the fact that it is extremely dangerous to use a retread tire containing such defects. It was conceded by one of defendant's experts that a tire with a mold-pinch could not be as good a tire as one without a mold-pinch and that he would not want one of his customers using a tire with a mold-pinch without knowing it. Another of defendant's experts admitted that he 'never saw a tread come off like that'; that there was something unusual about it and that (referring to the casing and retread in evidence) 'it is the derndest looking mess I have ever seen in my life for ordinary wear'. When asked if there was not something wrong with the workmanship, he merely said, 'Well, it wasn't done intentionally, I'm sure of that.' Some of defendant's experts gave their opinions that the tire had been used in an underinflated condition, but the evidence on that subject, other than said opinions, was to the contrary.

"It was plaintiffs' claim upon the trial that an automobile tire is an article which, if negligently manufactured, becomes imminently dangerous to life and limb in the use for which a tire is intended; that the defendant was guilty of negligence in retreading the tire in question and selling it for such use; and that as a direct and proximate result of such negligence, and without negligence on the part of plaintiffs or any of them, the tire in question disintegrated when put to such use thereby overturning the automobile in which they were riding and causing their injuries. There was ample evidence to sustain plaintiff's claims and the trial court made findings in accordance therewith.

"Defendant makes the claim that some of the findings are not sustained by the evidence, but we are of the opinion

that all of the material findings are sustained. Defendant claims that the findings on the issue of proximate cause were based on speculation and conjecture and not upon any fair inference. This claim cannot be sustained. While experts were not in accord as to the immediate cause of the disintegration of the defective tire, this would appear to be immaterial. Plaintiffs presented ample evidence to show that defendant was negligent in manufacturing the defective tire and placing it on the market and the only fair inference to be drawn from said evidence is that defendant's negligence was the proximate cause of the accident.  ▮  In this connection, defendant claims that 'the wrong of Gilbert and the high speed at which the car was traveling intervened assumed negligence' on the part of defendant  The 'wrong of Gilbert' consisted in buying the tire from defendant as a second and in selling it to plaintiff Nebelung as a first, but under the testimony of defendant's own witnesses, a second was as safe for use as a first.  The 'high speed' at which the car was traveling was approximately sixty miles per hour.  ▮  This brings us to the further claim of defendant that driving at such speed constituted negligence on the part of plaintiffs and that the findings negativing contributory negligence were contrary to the evidence.  This claim appears equally untenable as it cannot be said that the evidence showed that plaintiffs were guilty of contributory negligence as a matter of law.  The automobile was being driven along a surfaced highway which was eighteen feet wide with four foot shoulders.  The accident happened in open, desert country at a time when no other traffic was in the vicinity.  In fact, it was fifteen minutes or more after the accident happened before any other vehicle arrived upon the scene.  The question of whether plaintiffs were guilty of negligence by reason of the speed of the car was one for the trier of the facts and the trial court's findings may not be set aside under the circumstances.  With respect to the question of speed, it is a matter of common knowledge that automobiles are operated at times at a speed of approximately sixty miles per hour.  Such speed is not unlawful under all circumstances and manufacturers of automobiles and automobile tires must reasonably anticipate that automobiles will be driven at times at such speed.  We therefore conclude that defendant may not take shelter behind either the alleged

'wrong of Gilbert' or the 'high speed' at which the car was being driven.

■ ''Defendant further contends that certain findings are in irreconcilable conflict. We find no conflict in any of the material findings. The claim that the finding 'that each plaintiff was free from negligence which contributed to the happening of the accident' is in irreconcilable conflict with the finding 'that it is not true that plaintiffs, or any of them, were guilty of contributory negligence as alleged' is hyper-technical. ■ The remaining alleged conflicts arise out of the situation presented by the pleadings and proof. Plaintiffs pleaded in their complaint that Gilbert was an agent of the defendant and that defendants made certain express warranties to plaintiff Nebelung with respect to the tire. They also pleaded negligence. The evidence developed that Gilbert was not an agent of defendant and that defendant had made no express warranty to either Gilbert or plaintiff Nebelung concerning the tire. The trial court found that defendant had sold the tire 'without any express warranty'. It further found that defendant 'represented that the tire was in all respects safe for use in the manner for which it was manufactured and sold' and 'warranted and held out said tire to be free from defects and capable of withstanding use for which it was designed . . . '. We find no irreconcilable conflict in said last-mentioned findings, but furthermore, the issues upon which said findings were based have now become immaterial issues. When plaintiffs ascertained that Gilbert was not an agent of defendant, they predicated their claim solely upon the alleged negligence of defendant and the judgment based upon such negligence finds support in the material findings without resort to the findings relating to any warranty, either express or implied. ■ Defendant further lays stress on a finding which referred to a paragraph of the complaint and found the allegations thereof to be true. Said paragraph of the complaint used the word 'defendants' and charged that defendants did certain acts. In other findings, the trial court found that defendant Gilbert was not the agent of the defendant company. We believe, however, that it is entirely clear that the reference to the paragraph of the complaint wherein the word 'defendants' was employed was an inadvertence in so far as the adoption of the plural was concerned

654

and that the trial court intended to refer only to the defendant company in said finding. We therefore believe that said findings may be reconciled and obviously should be reconciled as above indicated.

■ "Before proceeding further we should state that we are of the opinion that the nature of the article here sold brings the cause within the recognized exceptions to the general rules which ordinarily shield the manufacturer from liability to persons as to whom there exists no contractual privity with the manufacturer. The general subject is discussed at length in *Kalash* v. *Los Angeles Ladder Co.*, 1 Cal. (2d) 229 [34 Pac. (2d) 481], and such discussion need not be repeated here. It is sufficient to state that the trend of judicial decisions is to extend the exceptions beyond articles which are inherently dangerous and to include all articles which are reasonably certain to place life and limb in peril if negligently manufactured. Several examples of such articles, including automobiles, are referred to in the cited case and we believe that an automobile tire is such an article. We may further state that we do not believe the case of *Stultz* v. *Benson Lumber Co.*, 6 Cal. (2d) 688 [59 Pac. (2d) 100], to be controlling as that case involved the manufacture and sale of lumber in which the defects were apparent.

■ "Defendant also contends that 'the judgment should be reversed at least in so far as it affects appellant's liability to plaintiff Virnig because the trial court did not grant the appellant tire company's motion for new trial'. Our examination of the record leads us to the conclusion that this contention is likewise without merit. Defendant's motion was based upon alleged newly discovered evidence relating to the extent of the injuries suffered by plaintiff Virnig. It was accompanied by affidavits and motion pictures showing activities engaged in by said plaintiff after the trial.

"The testimony on the trial showed that said plaintiff, a man 26 years of age, has suffered a fracture of the second and third lumbar vertebrae resulting in curvature of the spine and muscle spasm; that he stood and walked in an unnatural position; that the condition would be permanent but would be helped by a brace; that with proper bracing, the muscles should strengthen within a few months and the pain would then be negligible 'except if he was exerting himself strenu-

ously under heavy lifting'. While the doctors testified that the condition would be permanent, the testimony did not indicate that said plaintiff would be permanently prevented from engaging in all work and physical activity. On the contrary, it indicated that proper treatment would restore said plaintiff within a few months to a condition which would permit many normal activities, but not that of strenuous, heavy lifting. In short, the testimony showed a serious and permanent injury to said plaintiff but did not show a total and permanent disability. The award of $7,500 indicates that this was the view taken by the trial court.

"The accident occurred in October, 1936, the trial was had in June, 1937, and the judgment was entered in October, 1937. It appears that said plaintiff has been examined prior to the trial by a doctor selected by defendant but that said doctor was not called at the trial. The activities stressed in defendant's affidavits were recreational activities and work attempted by said plaintiff several months after the trial. It is conceded that the counteraffidavits 'deny everything' except that said plaintiff engaged in these activities and as a result he 'experienced pain and discomfort in his back'.

"Taking into consideration the testimony given at the trial, the amount of the verdict and the showing made on the motion for new trial, we cannot say that the trial court erred in failing to grant said motion. ■ When a new trial is asked upon the ground of newly discovered evidence, 'the moving party must make a strong case' (*Smith* v. *Schwartz*, 14 Cal. App. (2d) 160, 166 [57 Pac. (2d) 1386]), and this is particularly true when the alleged newly discovered evidence relates to facts occurring after the conclusion of the trial. The only California case, involving comparable facts, which has been called to our attention is *Lawrence* v. *Pickwick Stages, N. D.*, 68 Cal. App. 494 [229 Pac. 885]. It was there held that the motion for new trial had been properly denied. Upon the showing made here, we cannot say that the trial court abused its discretion in failing to grant said motion and in permitting the statutory time to expire.

■ "The last contention of defendant is that the trial court committed prejudicial error in denying in part its motion to strike said plaintiff's counteraffidavits submitted in opposition to the motion for new trial. Said motion was

656

granted in part and while said affidavits may have contained other hearsay statements which were not stricken, we cannot say that the ruling of the trial court constituted prejudicial error.''

Appellant's motion to show moving pictures of activities of respondent, Virnig, subsequent to the trial, is denied.

Respondents' motion to produce additional evidence in this case is hereby denied.

The judgment is affirmed.

Houser, J., dissented.