[No. 30518. Department One. June 1, 1948.]

JAMES D. ATKINS *et al., Respondents,* v. NILES
CHURCHILL, *Appellant.*[1]

¹Reported in 194 P. (2d) 364.

*Lee J. Campbell* and *C. D. Cunningham,* for appellant.

*Hull & Armstrong,* for respondents.

MILLARD, J.—A pickup truck, owned by Ray Swayne and operated by plaintiff wife, collided with an automobile owned by defendant and operated by Ted Zorn, a minor. Plaintiff husband, as a result of that accident, sustained personal injuries. He instituted an action to recover against defendant, alleging that the personal injuries were sustained as a result of the negligent driving by Ted Zorn, agent of defendant, of an automobile owned by defendant, and operated by Zorn, in furtherance of the family purpose for which defendant kept and maintained the automobile.

By answer and cross-complaint, defendant pleaded in bar of the action contributory negligence of plaintiff Atkins and his wife.

Trial of the cause to the court, sitting with a jury, resulted in verdict in favor of plaintiffs, in the amount of $14,702. Motion for judgment notwithstanding the verdict was denied. Upon acceptance by plaintiff of reduction of the verdict to $12,202, motion for new trial was denied, and judgment was entered on the verdict as reduced. Defendant appealed.

James D. Atkins and wife resided in Lewis county, on the Salzer Valley road, about five miles from its intersection with highway No. 99, at the south city limits of Centralia. A beer tavern is located at this intersection. Between 8:30 and 9 p.m., April 19, 1947, James D. Atkins and his wife and his wife's brother, who were riding in a Model A Ford pickup en route to a dance north of Centralia, stopped at the beer tavern, where they remained until 10:45 p. m. Cyrus Robinson, brother of Mrs. Atkins, and James D. Atkins became intoxicated on beer. Mrs. Atkins drank one "stubby" (11 ounces) shortly after arrival at the tavern. She partook of no other intoxicants throughout the evening and was not then, or later, under the influence of intoxicating liquor of any kind.

The party parked the pickup Ford at the tavern and went to the dance in a taxicab, where they arrived about 11 p.m. On their arrival at the dance hall, Atkins drank another bottle of beer. The three members of this party left the dance hall in a taxicab about 1 a.m., April 20, 1947, and went directly to their Ford pickup truck, which was parked near the tavern mentioned above.

Only the headlamp on the left-hand, or driver's, side of the truck was lighted. It fairly appears that Atkins and Robinson were still feeling the effect of the liquor they had consumed. On their return to the tavern, they entered the pickup truck to proceed up the Salzer Valley road to their home. Mrs. Atkins operated the truck for the reason, she testified, "because if they drank any beer at all I always

drove." Atkins sat in the center and Cyrus Robinson sat on the right end of the seat.

The Salzer Valley road leaves highway No. 99 at the tavern, then proceeds in a southeasterly direction for a distance of about three miles, then its course is northeasterly over the hills east of Centralia, down into Hanaford Valley, and then into Centralia at the northeastern city limits. This circuitous road is generally referred to as the "loop." The pickup truck operated by respondent wife had proceeded over the Salzer Valley road approximately four miles from the intersection of that road with highway No. 99, at the tavern, when Mrs. Atkins observed an approaching vehicle. Mr. Atkins was ill, doubtless as a result of his consumption of the beer; his arms were folded onto his stomach and his head was down, resting on his knees. He requested his wife to stop the car so that he could get out onto the highway. The wife of Mr. Atkins informed him she would stop as soon as the approaching automobile had passed. She was pulling the pickup truck toward the extreme right edge of the highway, proceeding not more than ten miles an hour, preparatory to stopping the truck, when the truck collided with the approaching automobile. Robinson had just loosened the door on his side in order that it could be opened.

The approaching vehicle was a Chrysler automobile owned by Niles Churchill and operated by Roger Zorn, an unlicensed minor then fourteen years old. There was evidence, which the verdict reflects was accepted by the jury as true, that the automobile of appellant was proceeding at least thirty-five miles an hour, and that it collided with the truck operated by respondents on respondents' right side of the road. Respondent husband fell out of the truck into the ditch on his right-hand side of the highway, and was later taken to a hospital in Centralia.

On the evening of April 19, 1947, the Centralia high school held a "tolo" dance, one where the girls escort the boys. Appellant, who is owner of the Chrysler automobile involved in the wreck, testified that he purchased the automobile in 1939, and kept and maintained it for the comfort and convenience of himself and the members of his family.

His daughter, Hattie, a student of Centralia high school, invited Wayne Tamblyn as her guest. Two other high school girls, Donna Madsen and Rachel Thompson, friends of Miss Churchill, invited Roger Zorn and Jerry Rubenstein as their guests. None of these six persons was more than fifteen years of age, and none had an automobile operator's license or was qualified, under the statute, which provides that a vehicle operator's license shall not issue to any person under the age of sixteen years. Rem. Supp. 1947, § 6312-45.

The Misses Madsen and Thompson went to the home of Miss Churchill. The three girls got into the automobile of appellant, who drove the automobile, first to the home of Roger Zorn, who then joined the party, and then to the home of Jerry Rubenstein, who had gone to the home of Wayne Tamblyn. Mr. Churchill took the three girls and Roger Zorn to the Tamblyn home, at which point Jerry Rubenstein and Wayne Tamblyn joined the party. The six young people departed from the Tamblyn home and started to walk to the high school. Appellant then drove his automobile to the home of friends, where he and his wife were dinner guests. On arrival at the home of his hosts, appellant conversed with his wife, then promptly departed from the home where he was a guest and met the children on their way to the dance, about one-half block from the school. Zorn testified that appellant then decided to let the youngsters use the car. It is admitted that appellant at that time turned his automobile over to his daughter and to Jerry Rubenstein.

After the dance, the party of six went to a cafe south of Chehalis, returned to Centralia, then proceeded around the "loop," a road which culminated in the Salzer road, re-entering highway No. 99 at the south limits of Centralia. When this party departed from Centralia, Roger Zorn became the driver of appellant's automobile because he was familiar with the road and Jerry Rubenstein had never been over same. Roger Zorn first saw the respondents' approaching truck, with only the one lighted headlamp thereon, when it was about fifteen hundred feet distant. He did not slacken his speed. When the cars were seven hundred fifty feet

distant from each other, Zorn ceased looking at the approaching car and did not decrease his speed, nor did he again observe the approaching car until the two vehicles were about thirty feet apart.

█ Denial of motion for judgment notwithstanding the verdict is assigned as error. It is enough to say respecting this assignment, which is not argued in the brief, that, clearly, a jury question was presented on the primary negligence of the operator of appellant's automobile by the evidence that respondents' truck was proceeding slowly on its own right side of the road, and appellant's automobile was rapidly proceeding on its wrong side of the road at the time the collision occurred.

█ In addition, there was ample evidence to warrant submission to the jury of the question of negligence of appellant in entrusting his automobile to an unlicensed minor. *Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599; *Smith v. Nealey,* 162 Wash. 160, 298 Pac. 345. See, also, annotation, 168 A. L. R. 1364 *et seq.* In that annotation is collected the cases which support the general rule that the owner of a motor vehicle, who entrusts the vehicle in the hands of an unfit person, thereby enabling the latter to drive it, may be held liable for an injury negligently inflicted by the use made of the vehicle by its driver as a proximate result of the incompetency or unfitness of the driver, although the use being made of the vehicle at the time of the injury was beyond the scope of the owner's consent. The authorities uniformly hold that it is negligence *per se* for the owner of a motor vehicle to entrust it to a minor under the age specified by statute. The prohibitory enactment itself constitutes a conclusive declaration that an individual younger than the age designated is incompetent to drive a motor vehicle.

The negligence of appellant was submitted to the jury on two theories: (1) entrusting the automobile to an unlicensed minor under the age where one is eligible to secure such license, and (2) on the family car doctrine.

It is admitted that appellant entrusted his automobile to his immature daughter and to Jerry Rubenstein, both of

whom were under the age designated by law as eligible to operate a motor vehicle. When a parent places his immature child in charge of an automobile, and injury follows as a direct result of the careless operation of the automobile, the parent becomes answerable for damages, not upon the basis of family relationship, or necessarily upon that of principal and agent, but by reason of his culpability in making it possible for the child to occasion harm.

Appellant does not question the rule respecting appellant's negligence in entrusting his automobile to an unlicensed minor, but argues that there was no evidence to justify submission on the family car doctrine.

By instruction No. 11, the court charged the jury that, if it found that appellant entrusted his automobile to his minor daughter or other minor under the age designated by law as eligible to operate a motor vehicle, and that such act of appellant was a proximate cause of the injury to respondent husband, then, in the absence of contributory negligence, the verdict should be for respondents. The court further instructed the jury that it is the law that a child, not of sufficient age to obtain a driver's license, is presumed to be incompetent to drive a car unaccompanied by an adult, and that the liability of the person who entrusts the automobile to such a child rests not upon the relation of parent and child, but upon the negligence of the person who, by entrusting the car in the hands of the child, thereby aids in making it possible for the child to cause the injury. Appellant may not successfully challenge that instruction, as he did not except to same.

The court further instructed the jury as follows:

"A father who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair and anyone driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is the agent of the father. As such, the father is liable for the agent's acts.

"If you find that the Churchill automobile was used and maintained for the customary conveyance of the members of the Churchill family, including the daughter, Hattie

Churchill, and that the driver at the time of the collision was acting with the consent of the defendant Churchill, either express or implied, and that the car was being used for the pleasure of a member of the Churchill family, then the driver is the agent of the defendant Churchill and as such, the defendant Churchill is responsible for the acts of said driver."

Appellant's exception to the instruction reads as follows:

"Defendant excepts to Instruction No. 15, that being the instruction having to do with the family car doctrine. It is not applicable to the facts in this case because it is an admitted fact that the defendant Churchill turned his automobile over to Jerry Rubenstein and his daughter, and the resulting negligence therefrom, if any, is not upon the theory of the family car doctrine but solely upon the alleged negligence of the defendant in entrusting the car to the minor or minors."

Appellant testified that he kept and maintained the automobile for the comfort and convenience of himself and the members of his family. It is admitted that appellant turned the automobile over to his daughter and one of her boy friends to attend a dance. Appellant made the transportation of his daughter in that automobile his affair, and anyone operating that automobile for that purpose, with appellant's consent, even if not a member of appellant's family, was appellant's agent. *Davis v. Browne,* 20 Wn. (2d) 219, 229, 147 P. (2d) 263, holds:

"It has also been uniformly held in this state, ever since it was so decided in *Birch v. Abercrombie, supra* [74 Wash. 486, 133 Pac. 1020], that one who furnishes a vehicle for the customary conveyance of the members of his family, whether for business or solely for pleasure, makes the transportation of such persons by that vehicle his affair, that is, his business, and anyone driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent."

The foregoing instruction properly states the law applicable to the family car doctrine, which was properly before the jury; hence, the assignment is without substantial merit. It is clear from the evidence that, at the time of the collision, appellant's automobile was being used in the

furtherance of one of the purposes for which it was maintained—the pleasure and convenience of a member of appellant's family. It is a factor of no importance that, at the time of the collision, appellant's automobile was not operated by a member of the family, as there is evidence that the car was being used with the consent, express or implied, of appellant. Appellant turned the car over to young Rubenstein and another member of the party, and they drove away in that car with appellant's consent and approval.

██ ██ Appellant next complains of exclusion of certain proffered evidence as to the authority of his agent. Appellant offered to prove by Jerry Rubenstein that Rubenstein obtained the automobile from appellant with the express understanding and direction that he, and the other members of his party, would drive from the high school to a certain cafe midway between Centralia and Chehalis, just north of the fairgrounds, and return the car to the Churchill home, and that Rubenstein was the one to drive the car. The other offer of proof was that appellant would testify that, on the evening of April 19, 1947, he entrusted his automobile to Jerry Rubenstein, a boy then fifteen years old, whom appellant knew to be a competent driver, with direction to the boy that he was to drive the automobile to the cafe midway between Centralia and Chehalis with appellant's daughter and the other parties named, and, after they had had their lunch, Rubenstein was to return the car to the home of appellant. Upon objection of respondents, the offers of proof were denied.

What we said respecting instructions Nos. 11 and 15, is applicable. One may not be exonerated from his original *per se* negligence, of entrusting an automobile to a minor under the age designated by statute for purposes of operation, by contending that instructions to the child were not followed. The fact that the six children went to a cafe at the south city limits of Chehalis, instead of to the cafe midway between Chehalis and Centralia, is not material, inasmuch as the collision did not occur at the time, or by reason, of this deviation. *Forman v. Shields, supra.* That

the automobile was being used for a family purpose may not be successfully challenged; hence, it is not material that Roger Zorn succeeded Rubenstein as operator of the car.

 During the course of the trial, Judge Bartz, a justice of the peace in Chehalis, was called as a witness on behalf of respondents. He testified, over objection of appellant, that appellant Churchill had pleaded guilty to a charge of entrusting his automobile to Roger Zorn, who was an unlicensed driver and a minor. Appellant offered to prove, in explanation of the conversation related by Judge Bartz on the witness stand, that he told Judge Bartz that Roger Zorn had no authority to drive his automobile, that he had entrusted it to Jerry Rubenstein to drive, with the specific instructions that he drive the automobile to a certain cafe and then return home. What we said above, respecting the contention of appellant that certain proffered evidence as to the authority of Jerry Rubenstein was excluded to prejudice of appellant, applies with equal force to the offer of proof that appellant informed Judge Bartz that Roger Zorn had no authority to drive appellant's automobile. Justice Bartz was not cross-examined at the time he testified that appellant entered a plea of guilty.

The testimony which appellant sought to introduce was collateral and immaterial, and it could not thus be offered to impeach Judge Bartz, as no foundation was laid for such impeachment. We held in *Haley v. Brady*, 17 Wn. (2d) 775, 137 P. (2d) 505, 146 A. L. R. 859, that evidence that a witness had been convicted of a crime upon a plea of *nolo contendere* is admissible as affecting the credibility of such witness; and it was proper for the court to refuse to permit the witness and his attorney in the criminal case to explain the circumstances surrounding the entry of the plea.

 The court, by instruction No. 10, charged the jury as follows:

"The term 'proximate cause' as used throughout these instructions, means that cause which in a direct, unbroken sequence produces the injury complained of and without which the injury would not have occurred. It is admitted that the automobile in which plaintiff was a passenger, was

being driven with only one headlight. While under the circumstances this is negligence as a matter of law, before this can bar recovery by plaintiff, *the defendant must show by a preponderance of the evidence that such negligence was a proximate cause of the accident—that is, that the failure to have two headlights was a cause which in direct unbroken sequence produced the collision and without which the collision would not have occurred.*" (Italics ours.)

Appellant contends that the instruction limited his right to prevail solely upon the ground of respondents' failure to have two headlights, and eliminated from the consideration of the jury other acts of negligence upon the part of respondents, evidence of which had been submitted to the jury.

By instruction No. 10, the jury was told that, even if respondent was guilty of negligence as a matter of law by having only one headlight on the vehicle operated by him, appellant had the burden of proof that such negligence was a proximate cause of the collision before the *per se* negligence of respondent could bar recovery. This is a correct statement of the law. Any of the other claimed negligence on the part of respondents was not eliminated by this instruction from consideration of the jury, as, by the other instructions, those claims were submitted to the jury. The jury was properly instructed that it should consider the instructions as a whole, and not pick out any particular instruction and place undue emphasis on such instruction.

While it was negligence *per se* to operate respondents' truck without complying with the positive statutory requirement respecting headlights, it does not follow that that negligence bars recovery against someone else whose negligence immediately occasioned the injury. Negligence arising from the violation of a statute has the same effect as any other negligence. The burden of proving contributory negligence is upon the defendant, and the defense of contributory negligence in the violation of a statute is not established, unless such violation proximately contributed to the injury. *Bredemeyer v. Johnson,* 179 Wash. 225, 36 P. (2d) 1062.

By instruction No. 16, the court instructed the jury as follows:

"Defendant Churchill contends that he entrusted his automobile to Jerry Rubenstein, a minor, age 15, who admittedly had no driver's license and was not of an age to be eligible for one. The defendant Churchill contends that inasmuch as Roger Zorn, another minor, age 14, was the driver at the time of the collision, that he (Churchill) is not responsible for the acts of Roger Zorn.

"You are instructed that if you find that a reasonably prudent person in the exercise of ordinary care would have appreciated that due to the youth of Rubenstein and the other occupants of the car, and due to all of the circumstances then and there existing that the instructions, if any, given the Rubenstein boy might not be followed, or that one of the other children involved might later become the driver, then the fact that the Zorn boy was the driver, does not relieve the defendant Churchill of negligence, in the event, of course, that you find the original entrusting to be negligent."

Appellant excepted to the foregoing instruction upon the ground that there was no evidence that appellant entrusted his automobile to Jerry Rubenstein, or to Roger Zorn. A further ground of the exception was that there was no testimony before the jury that "Churchill gave the Rubenstein boy or anyone else any instructions whatever."

Respondents would have been entitled, had they so requested, to an instruction that the automobile of appellant, at the time of operation, was being used for family purposes, with the consent, express or implied, of appellant; and that appellant was not relieved of his negligence in the original entrusting of the automobile to the minors (his daughter and Rubenstein), even if the automobile was being operated by someone else at the time of the collision. The inclusion in the instruction of the phrase, "the instructions, if any," does not constitute error, as it could not, in any manner, have been prejudicial because it was in favor of appellant.

■ Appellant admitted that he entrusted his automobile to his daughter and Jerry Rubenstein, who were minors under the age designated by statute, for purposes of operation. This was negligence *per se*. The negligence of those

two minors in entrusting the automobile to Roger Zorn, who was under the age designated by statute, for purposes of operating the automobile, constituted negligence *per se* of appellant, himself.

Appellant excepted to instruction No. 17, on the ground that it was erroneously based upon the family car doctrine, or partially so, at least, and the family car doctrine was not an issue in the cause. The instruction outlined the two theories upon which respondent sought recovery. Our discussion of the assignment respecting the exclusion of certain proffered evidence answers the question raised by this assignment.

 By instruction No. 28, the jury was charged as follows:

"You are instructed that the amount of alcoholic beverages, if any, consumed by the plaintiff Atkins or Cyrus Robinson and the question as to whether they were, or either of them was, intoxicated or otherwise, has no bearing upon the issue as to which party should receive your verdict, excepting, however, you may consider the extent of alcoholic beverages consumed by either or both insofar only as it affects their credibility as witnesses."

Appellant excepted to the instruction on the ground that it limited the effects of intoxication to only one issue—credibility of the witness. It is contended that respondent Atkins was intoxicated prior to the accident, intoxicated at the time of the accident, and was intoxicated for several hours thereafter; therefore the court should have instructed the jury to determine whether, by reason of such intoxication, Atkins was guilty of contributory negligence which was a proximate cause of the accident. Conceding, *arguendo*, the correctness of the position for which appellant contends, the error, if any, constituted partial nondirection; therefore, error may not be predicated thereon, unless specific instructions, which the court might give to the jury without modification, are requested and refused. We find no such requested instructions in the brief. We find no evidence in the record that the intoxication of Atkins or Robinson contributed to the accident, or that those two interfered, be-

cause of intoxication, with the operation of the vehicle by Mrs. Atkins.

▮▮▮ Instruction No. 29 reads as follows:

"Evidence has been introduced that Cyrus Robinson struck the plaintiff Atkins a blow with his fist, sometime after the collision in question. This has been denied.

"You are instructed that the question as to whether or not such a blow was struck is to be considered by you only as to the amount and extent of injuries, if any, sustained by the plaintiff in the collision. Under no circumstances is it to be considered by you in your determination of which party receives your verdict but only in arriving at the injuries, if any, sustained by plaintiff Atkins as a proximate result of the collision, if you find a verdict in his favor."

Appellant contends that the instruction was erroneous and prejudicial for the reason that it limited the consideration of this testimony by the jury to one purpose solely, that is, in determining the extent of the injuries to Atkins, if he suffered any injury as a result of the striking of Atkins by Robinson. Whether any fight, subsequent to the collision, had anything to do with the question of negligent operation of respondents' truck, is nothing more than speculation and conjecture.

▮▮▮ Instruction No. 34 reads as follows:

"Marjorie Atkins, wife of the plaintiff, has admitted that she was heretofore convicted in Justice Court of a misdemeanor. This conviction is to be considered by you only as affecting the credibility of Marjorie Atkins as a witness, and not as evidence of any wrongdoing or negligent act. On the other hand, evidence has been introduced to the effect that the defendant, Niles Churchill, entered a plea of guilty to the charge of entrusting his motor vehicle to an unlicensed minor, to-wit, Roger Zorn, age 14. This may be considered by you, together with the other evidence in the case in arriving at your verdict."

Appellant concedes that that portion of the instruction referring to the conviction of Marjorie Atkins, and how such conviction is to be considered by the jury, is correct. Appellant contends that that portion of the instruction which states that evidence had been introduced showing that appellant Churchill entered a plea of guilty in justice court to

the charge of entrusting his automobile to an unlicensed minor, and that the jury had the right to consider his plea of guilty, together with the other evidence in the case, in arriving at its verdict, and in not limiting that plea as evidence affecting the credibility of appellant Churchill, was prejudicially erroneous.

The court was not referring to a conviction of appellant Churchill, but only to his plea to a certain charge which was to be considered along with the other evidence in the case. It was admissible as a declaration against interest. In *Konshuk v. Hayes,* 150 Wash. 565, 567, 273 Pac. 957, we said:

"A plea of guilty to a charge of crime is in the nature of an admission. It is an admission of wrong on the part of a defendant so pleading. The jury are therefore entitled to consider it as it considers any other admission; they must view it in connection with the surrounding circumstances, and give it such weight as in their judgment the circumstances warrant. In this instance, the plea was evidence on the general issue, and it would have been error on the part of the court to restrict it as applicable solely to the credibility of the witness."

Respondent Atkins, who is twenty-nine years old, with a wife and children, had an earning capacity of four hundred fifty dollars per month. He suffered serious permanent injury. The trial court was of the view that the verdict of $14,702 was so excessive as to indicate that the amount of the verdict was a result of passion or prejudice, and stated that it would grant appellant's motion for a new trial unless respondent consented to a reduction on the verdict in the amount of twenty-five hundred dollars. The court gave the following reason for the reduction:

"During the trial the plaintiff Atkins appeared in court with his right arm supported by an airplane splint, which held his arm in a horizontal position at shoulder height with his arm bent at the elbow so that he appeared to be in continuous discomfort. And even though the injury to the arm was in no way chargeable to the defendant and an instruction was given to that effect, I will feel that it had an effect on the jury that could not be eliminated even by an instruction, and believing that that affected the verdict to the extent of $2500 I felt that it should be reduced in that sum,

and if the plaintiff did not accept such reduction that a new trial would be granted upon that ground."

The court properly instructed the jury that, since the alleged injuries received by Atkins, April 20, 1947, he had received additional injury to his right arm and shoulder, and that appellant in this action is in no way responsible for the injury received by respondent to his right shoulder, if any, since the alleged injuries to respondent, April 20, 1947. We find nothing in the record evincing any endeavor on the part of respondents to convince the jury that appellant was responsible for the later injury.

Respondents contend that, unless we can say in review of this appeal, the verdict was so excessive as to unmistakably indicate that the amount of the verdict was a result of passion or prejudice, then the verdict should be reinstated. The controlling statute reads as follows:

"If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict, and if such party shall file such consent and the opposite party shall thereafter appeal from the judgment entered, the party who shall have filed such consent shall not be bound thereby, but upon such appeal the supreme court shall, without the necessity of a formal cross-appeal, review de novo the action of the trial court in requiring such reduction or increase, and there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice." Rem. Rev. Stat. (Sup.), § 399-1 [P.P.C. § 78-5].

We cannot say, on the record before us, that the damages awarded by the jury were so excessive as to indicate that the amount of the verdict must have been the result of passion or prejudice.

Immediately after he sustained the injuries Sunday morning, respondent husband was taken to the Centralia hospital, where he remained until the following Tuesday. He visited his physician thereafter for diathermy treatments for four weeks. He was employed as a brakeman on the Southern Pacific railroad, and, prior to his injuries, earned about four hundred fifty dollars per month. He endeavored to return to work, May 25, 1947, and over a period of three months he worked a month and one half. Due to his injuries he was unable to perform his duties or stand the jar of the engine and was given a leave of absence. Since the injury sustained by him, he has lost fifteen to eighteen pounds in weight; he suffers pain in his neck and face and has limitation of movement of his neck, and has numb areas in his right arm, face, and chest. For several months he had to carry his neck rigid at an angle, and any motion caused pain. His vision is impaired, and he suffers headache and nervousness. He suffered a concussion of the brain, a ruptured cervical disc, had seventy-five per cent permanent limitation of movement of the neck, permanent anesthesia of the face and chest and right arm due to injuries to the cervical and brachial nerves. He also has a permanent injury to the facial and trigeminal nerves.

There is nothing in the record to sustain the contention that the verdict, in the amount of $14,702, was rendered under the influence of passion or prejudice. On the facts before it, the jury was warranted in returning the verdict in the amount of $14,702.

There should be no distinction in the weight to be given to the verdict of the jury in the assessment of damages for personal injuries and their findings of fact on any other question. The jury heard all the testimony in the cause and doubtless gave credence, as it was the right and duty of the jury to do under the law, to the testimony of respondent Atkins and others with regard to his injuries; and if that testimony is true, the amount of damages which the jury assessed was not excessive.

The cause is remanded to the trial court with direction to reinstate the verdict of $14,702. As thus modified, the judgment will be affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.

---

July 9, 1948. Petition for rehearing denied.

[1]Reported in 194 P. (2d) 397.