[L. A. No. 22125. In Bank. Feb. 15, 1952.]

BEATRICE J. BENTON, a minor, etc., et al., Respondents, v. L. D. SLOSS, Appellant.

McInnis & Hamilton and John W. McInnis for Appellant.

Johnson & Johnson and Harry Ashfield for Respondents.

Belli, Ashe & Pinney, as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—On Friday, May 23, 1947, defendant Jay Fetters, a 19-year-old boy, selected at defendant Sloss' used car lot a 1935 Chevrolet that Sloss had purchased five days . earlier. Sloss did not ask Jay his age or whether he had a

driver's license. Jay paid $75 of the $100 down payment, and Sloss allowed him to take the car home. On Saturday afternoon, Jay returned with the car and the $25 balance of the down payment. While filling out the sales contract, Sloss discovered that Jay was a minor and refused to complete the contract unless Jay's father signed it. Jay left the lot about 5 o'clock with the car and a contract form for his father to sign. The father refused to sign. He testified that "when I looked at the car and seen it was nothing but a wreck I called up Sloss and told him to come and get the car; that the kid had no business with it; that he had no driver's license and no experience, and that it was nothing but a wreck, but he wouldn't pick it up." The father then told Jay to return the car. Jay drove it to the lot Saturday night and again Sunday morning, but Sloss was not there at either time.

After leaving the car lot on Sunday morning, Jay met two minor girl friends, Beatrice Benton and Marlie Alden, plaintiffs in this action, and a boy friend (Richard Kasitz, and took them for a ride in the country. They were accompanied by another car driven by Elden Earnest. The two drivers were racing and alternately passing each other on a two-lane highway at about 45 miles per hour. As Jay was passing Elden's car, another car suddenly emerged from a dip in the road. To avoid a head-on collision, Jay swerved to the right, and passed in front of Elden's car and behind a car immediately ahead of Elden travelling in the same direction. Since the Chevrolet did not have a horn, Jay could not warn Elden to pull over or slow down. To avoid hitting the car in front of Elden, Jay applied his brakes. The right rear wheel locked and the left wheel brakes failed to operate. His car skidded across the highway, leaving black skid marks on the right side only. Jay attempted to drive onto the shoulder of the highway, but the car slid into a telephone pole by the highway. Plaintiffs were injured by the collision of the car with the telephone pole.

Plaintiffs filed this action against Sloss, Jay, and Jay's father. The case was tried without a jury, and each plaintiff recovered judgment against Jay and Sloss. Judgment was returned in favor of Jay's father. Defendant Sloss alone has appealed.

■ Sloss first contends that he is absolved from liability under section 403 of the Vehicle Code.* This statute protects

---

*"No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other

the driver and all persons legally liable for his conduct from liability to guests for ordinary negligence. The driver is liable, however, for injuries to his guests caused by his intoxication or wilful misconduct. ▮ There is no evidence of intoxication in the present case, but the trial court found that Jay was guilty of wilful misconduct in operating a defective car, operating it without experience, and racing it on the highway against another car. Sloss, however, cannot be held under section 403 for Jay's wilful misconduct, since there was no showing that Jay was Sloss' agent. (*Stober* v. *Halsey,* 88 Cal.App.2d 660, 665 [199 P.2d 318].) ▮ For the same reason Sloss cannot be held under Vehicle Code, section 402, imputing to the owner of a vehicle liability for negligent operation, for, in the absence of a principal-agent relationship between the owner and the driver, the owner is not liable for the driver's wilful misconduct. (*Weber* v. *Pinyan,* 9 Cal.2d 226, 238 [70 P.2d 183, 112 A.L.R. 407].)

In the present case, however, plaintiffs seek to hold Sloss for his own negligence, and not as a person legally responsible for the driver's acts under section 403, or as an owner under section 402. (See *Weber* v. *Pinyan, supra,* 9 Cal.2d 226, 237.) ▮ Section 403 bars actions against the ''driver'' of a vehicle or against ''any other person legally liable for the conduct of such driver.'' The phrase ''person legally liable'' for the driver's conduct is clearly intended to cover cases in which the owner is vicariously liable for the driver's conduct because of the relationship of the parties, as principal-agent, or because of imputed negligence under section 402. (*Stober* v. *Halsey, supra; Stephen* v. *Spaulding,* 32 Cal.App.2d 326 [89 P.2d 683].) ▮ Section 403 does not limit the common-law liability of the owner of a vehicle for his own negligence as owner.

Sloss contends that since the owner of an automobile would be guilty of ordinary negligence in failing to make proper repairs, and would be protected by section 403 if he were driving the car at the time of the accident (*Rhoads* v. *Studley,* 15 Cal.App.2d 726 [59 P.2d 1082]; *Ohlson* v. *Frazier,* 2 Cal. App.2d 708 [39 P.2d 429]), the purpose of the section would

person, has any right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver.''

be defeated if he were held liable for the same act of negligence merely because he was not driving at the time of the accident.

█ Section 403, however, nowhere refers to owners of vehicles. The only persons absolved from liability are the driver and those legally responsible for his acts. Sloss was not the driver and the action against him is not based on any responsibility he might have for the driver's conduct. Sloss would bring himself within the section by construing "driver" to include "owner," but the section does not admit of that construction. Moreover, plaintiffs were Jay's guests, not Sloss', and are in the same position as anyone else who was injured because Sloss failed to maintain his vehicle in proper mechanical condition.

The controlling question, therefore, is whether Sloss was negligent and if so whether his negligence was a contributing cause of the accident.

█ Although a used car dealer does not insure the safety of a car he sells, and is under no duty to disassemble the car to examine its parts, he must make a reasonable inspection for defects that would make the car a menace on the highways. (*Supera* v. *Moreland Sales Corp.*, 13 Cal.App.2d 186, 191 [56 P.2d 595] ; *Egan Chevrolet Co.* v. *Bruner*, 102 F.2d 373, 375; *Flies* v. *Fox Bros. Buick Co.*, 196 Wis. 196, 210 [218 N.W. 855, 60 A.L.R. 357] ; see Prosser, Torts, p. 680; 122 A.L.R. 997 ; 99 A.L.R. 240.)

Section 660 of the Vehicle Code provides: "No dealer shall sell a used motor vehicle without first testing and if necessary adjusting the lights and brakes on such vehicle to conform with the provisions of this code." The standards for adequate brakes are set forth in section 670 of the Vehicle Code. Thus, a motor vehicle must be equipped with brakes adequate to bring it to a complete stop within 188 feet, when it is operated at a speed of 45 miles per hour on a dry asphalt or concrete pavement where the grade does not exceed 1 per cent.

█ Although Sloss testified that he had given the car a road test about five days before the proposed sale to Jay and that the brakes had then operated satisfactorily, there is no evidence that he made any test of the brakes to determine whether they met the standards prescribed by this section. Sloss' mechanics did not inspect or do any work on the brakes. The failure of the brakes shortly after delivery of the car to Jay indicates that the defect was present and discernible at the time of the proposed sale. Sloss' testimony at best

created a conflict in the evidence, which the trial court resolved in plaintiffs' favor. The trial court could reasonably conclude that a reasonable inspection would have disclosed the defective brakes. (*Egan Chevrolet Co.* v. *Bruner, supra.*)

█ We are also of the opinion that the trial court could reasonably conclude that Sloss' negligence was a contributing cause of plaintiffs' injuries. Jay's testimony, corroborated by the testimony of his guests and by the skid marks on the pavement, established that the right rear wheel of the car locked when Jay attempted to apply the brakes. At the most critical part of the operation, the brakes locked. Jay described the situation: "Elden put on his brakes and I tried to get in between them [the two cars], and I hit my brakes and the back wheel locked and it [Jay's car] fish-tailed, and I didn't want to hit the fellow in front of me, and so I went clear over to hit the shoulder and cramped the wheels and it slid right into the pole." The shoulder had a gravel surface and once the car skidded off the pavement, Jay was unable to get it back on the highway. One of Jay's guests, Richard Kasitz, testified that the car swung to the right when Jay applied the brakes, although Jay kept turning the steering wheel to the left.

Jay's negligent driving was unquestionably a cause of plaintiffs' injuries. Sloss' negligence was also a cause of those injuries, if it was a substantial factor in bringing them about. (*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298 [195 P.2d 783]; Rest., Torts, § 431.) This question of fact the trial court resolved in plaintiffs' favor. In the light of the evidence it could reasonably conclude that because of the defective brakes Jay could not avoid the collision. Since we cannot say that the issue is so clear that reasonable men cannot differ, the trial court's finding must be sustained.

█ The question remains whether the injury falls within the limits of Sloss' legal responsibility for the consequences of his conduct. Sloss could reasonably foresee that the brakes would be used in emergency conditions arising under ordinary highway speeds. (See *Nebelung* v. *Norman*, 14 Cal.2d 647, 652 [96 P.2d 327].) The negligent conduct of Jay did not relieve Sloss from liability, for the likelihood of negligent operation of the vehicle was one of the hazards that Sloss could reasonably foresee. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219, 220 [157 P.2d 372, 158 A.L.R. 872]; *McEvoy* v. *American Pool Corp., supra*, 32 Cal.2d 295, 298; *Lacy* v. *Pacific Gas & Elec. Co.*, 220 Cal. 97 [29 P.2d 781]; *Opple* v.

*Ray,* 208 Ind. 450, 456 [195 N.E. 81] ; see Rest., Torts, § 447.)
The possibility of a driver's negligently placing himself in a position from which he could not extricate himself without adequate brakes imposed on Sloss a duty to test and adjust the brakes of the car, and thus prevent it from endangering the lives of occupants, pedestrians, and other users of the highway. (Veh. Code, § 660; *Flies* v. *Fox Bros. Buick Co.,* *supra; Forman* v. *Shields,* 183 Wash. 333, 341 [48 P.2d 599].)

Sloss' duty extended not only to the prospective buyer, but to third persons who could reasonably be expected to be in the vicinity of the probable use of the automobile. (*Flies* v. *Fox Buick Co., supra* (pedestrian) ; see Prosser, Torts, p. 680; Rest., Torts, §§ 388, 392.) The injury to Jay's guests was therefore within the limits of the risk created by Sloss' negligence.

Sloss contends that Jay was given permission only to take the automobile to his father's home to induce him to sign the contract. Therefore, he argues, the use of the car for a pleasure trip on the following day was without his implied or express permission. The evidence shows that Sloss allowed Jay to take the car home on Saturday afternoon about 5 o'clock, knowing that he was only 19 years old. Sloss could reasonably expect, and indeed anticipate with a sale in mind, that Jay would not only test the performance of the car but drive it for pleasure pending the negotiation of the contract. Sloss' own absence from the lot precluded Jay's returning the car. He closed his lot about 7 o'clock Saturday night and went to a ball game, although Jay's father had telephoned earlier and asked Sloss to come for the car. The lot was likewise closed on Sunday morning. Under these circumstances, it cannot be said that Jay's operation of the car on Sunday was a risk beyond that created when Sloss allowed Jay to take the car from the lot on Saturday afternoon.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—I do not view the evidence as sufficient to sustain a finding that Sloss was guilty of negligence proximately contributing to the accident; neither do I find the judgment against Sloss sustainable, upon the record, on any tenable theory of law. Accordingly, I should reverse the judgment.