[Civ. No. 14294.   Second Dist., Div. Two.   Mar. 14, 1944.]

M. L. SHERMAN et al., Respondents, v. DR. C. B. FRANK, Appellant.

Nourse & Jones for Appellant.

Tudor Gairdner for Respondents.

MOORE, P. J.—Respondents sued appellant for damages resulting from a collision of their automobiles on a public highway. By the verdict they were awarded $2,500 each by the jury. After his motion for a new trial had been denied defendant brought the matter here. By his appeal appellant denies the sufficiency of the evidence, asserts excessive damages and assigns as errors the giving and refusal of requested instructions.

### The Proof Is Sufficient.

The claim of insufficiency of the proof to support the verdict is predicated upon the theory that the collision of the two cars was the result of an inevitable accident. While the facts present an issue which could have been judicially decided in favor of defendant, we have concluded that there is sufficient evidence to support the judgment.

Both parties were proceeding on U. S. Highway 66 about 17 miles west of Seligman, Arizona. Respondents were driving easterly in their Plymouth coupé; appellant was driving westerly in his Studebaker sedan. In the vicinity of their collision the highway is a smooth, black top, oily gravel construction about 20 feet in width with a gravel shoulder of about 2½ feet on each side. Paralleling the highway was a ditch five feet in depth. The temperature was in excess of 90 degrees. When respondents first observed the approach of the Studebaker they were traveling at about 40 to 45 miles per hour; the Studebaker was proceeding at

65 to 70 miles per hour. When it reached a point about 700 or 800 feet from the coupé, the Studebaker began to swerve over into plaintiffs' lane of travel. Thereupon, Mr. Sherman, operating the coupé, drove onto the right shoulder in order to avoid the oncoming sedan. He went so far that his left front wheel was entirely off the pavement and his speed was reduced to about 30 miles an hour. The coupé was given a side swipe by the Studebaker going at about 50 to 55 miles per hour, and was turned over into the ditch. When it came to a standstill it was headed in a direction opposite to its course of travel. The Studebaker turned over on its side, then onto its top and continued down the road to a point about 240 feet west of the locus of the impact. Just prior to the moment when the Studebaker began to swerve to the left of the center of the pavement the left front tire had blown out, leaving a jagged cut from the tread towards the rim.

Appellant testified that his Studebaker had been driven only 19,000 miles; that he had rotated his five tires every 5,000 miles; that he had inspected the tires at Gallup and again at Flagstaff, the latter place being 50 to 70 miles from the scene of the accident. But there was no proof as to the amount of air in the tire at the point of collision or at Seligman. If the blown tire had been continuously on the Studebaker from the date of its purchase by appellant, as it might reasonably have been, it had been worn far more than the other three tires on the automobile and could therefore carry less pressure. Notwithstanding the changing of the tires every 5,000 miles, one of them would have been in continuous use for the 19,000 miles the sedan had gone. This inference becomes more nearly a fact in the light of Mr. Sherman's observation that the spare tire had never been used while the tread of the blown tire was but partly visible. To drive such a car with tires so used on a road so hot at a speed of 70 miles per hour were, in themselves, facts from which negligence might reasonably have been inferred.

But appellant was, under the implied findings, negligent on another score. Under the evidence the jury might justifiably have found that appellant had been negligent in watching after the condition of his tires and the machinery of his automobile. ■ Merely because the operator is unable to control his automobile on the highway, by reason of defec-

tive wheels, tires, or machinery, is not a complete defense in the event that he should injure the property or life or limb of another. He is free from negligence only in the event he may have exercised the care which an ordinarily prudent man would have exercised to maintain his automobile in a reasonably safe running condition. If he fails to exercise such care, and if such failure proximately contributes to the happening of an accident, the operator of the car is liable for such loss as may be suffered by the victim of his negligence. (*Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal.App. 221 [282 P. 1009].) It is the duty of the driver of a motor car to see that it is so equipped that it may at all times be under control and not become a menace to other traffic. It is the function of the jury to determine whether the operator of an automobile has exercised reasonable care in order to ascertain its defective condition. (*Whitechat* v. *Guyette*, 19 Cal.2d 428 [122 P.2d 47].)

It is the duty of every motorist to drive his vehicle upon the highway at a speed no greater than is reasonable or prudent, having due regard for the traffic, the surface and the width of the highway, and in no event at a speed which endangers the safety of persons or property. (*Maus* v. *Scavenger Protective Assn.*, 2 Cal.App.2d 624, 627 [39 P.2d 209].) In view of appellant's obligation to travel with care, by reason of the heat, the surface of the highway and the age of his tires, the jury had abundant evidence from which they might reasonably determine that the speed at which appellant was driving was itself negligence. Irrespective of the testimony of the appellant the reviewing court will not interfere with a verdict if there is evidence in the record consisting of circumstances from which reasonable inferences may be drawn to support the judgment. (*Coppock* v. *Pacific Gas & Electric Co.*, 137 Cal.App. 80, 88 [30 P.2d 549].) The circumstances of the collision near Seligman afford inferences to uphold the judgment.

### The Damages Are Not Excessive.

The damages allowed Mr. Sherman were not excessive. Only $855.25 was allowed him for general damages. The remaining $1,644.75 was special damages. The proof was that he had sustained a sprained ankle, a bruised hand, cuts to both knees and bruises around the abdomen. Whether a sprained ankle is worth $200 or $2,000 is to be determined

by the jury according to the circumstances and proof in each case. It is a matter of common knowledge that a sprained ankle may cause more pain and loss of time than a broken leg. In addition to such physical injuries, Mr. Sherman was entitled to recover for the shock of the collision and for the anxiety throughout the weeks that followed. The determination of the amount of the award was for the jury and it cannot be disturbed in the absence of a showing of passion or prejudice. (*Coppock* v. *Pacific Gas & Electric Co., supra.*)

█ It is not the function of this court to weigh the evidence but it must view the evidence most favorably to the respondent. (*People* v. *Dukes,* 90 Cal.App. 657 [266 P. 558].) And it may determine whether the implied findings of the jury are based upon reasonable inferences from the established facts. (*Ryder* v. *Bamberger,* 172 Cal. 791, 799 [158 P. 753].)

█ The damages awarded to Mrs. Sherman are not so much in amount as to cause us to suspect that the jury were animated by passion or prejudice. She was very much upset. She suffered intense pain in her back, neck, and shoulders; suffered a painful bruise at the base of her spine; her foot was swollen and discolored throughout the ankle section and through the instep and could bear no weight upon it. She ached all over; the cuts and bruises burned and smarted. She did not sleep the night following the accident and for two days and nights on her return to Kansas she was sleepless and suffered pain. She could not walk without limping; remained in bed for six weeks, during which time she suffered pains through her spine and it was necessary to use an electric heating pad to obtain relief. She was unable to do any of her housework for six weeks and it was necessary for her to have treatments by a physician. Under the evidence it cannot be said that the jury, in assessing the damage, moved from an area of dispassionate deliberation into a state of passion or prejudice.

### The Jury Was Fairly Instructed.

█ (a) Appellant assigns the rejection of one of his offered instructions as materially prejudicial. It is taken from "California Jury Instructions Civil." In substance it requires the jury to determine: (1) Was defendant negligent? (2) Was such negligence a proximate cause of plaintiffs' injuries? (3) Was plaintiff negligent? (4) If so, did such negligence contribute in any degree to a proximate cause

of the accident? If so the jury must find for defendant; if not they must find for plaintiffs if they have previously found that defendant's negligence proximately caused plaintiffs' injuries, and must fix the amount of the damages in their verdict. The instruction is a correct presentation of a sound method for the jury to follow in their attempt to determine the specified issues. But the court was not required to use it at all, and certainly not if it was a duplication of matter included in other instructions. Such was the fact. Under the instructions on negligence, contributory negligence, ordinary care, proximate cause, and unavoidable accident, all legal principles suggested in the rejected instruction were defined. Moreover, the refused instruction is merely a method of approach which might be known to a jury without hearing it read by the court. Such method may be readily derived from the evidence, the arguments, the rulings and the instructions. No individual has a monopoly upon the processes of analysis. The rejected instruction contains no legal principles. It is no indispensable formula for a jury's guidance.

(b) The instruction given with respect to the items of damage to be awarded plaintiffs in event of recovery contained the following with reference to future consequences of the injuries suffered, to wit: "Such sum as will compensate said plaintiffs reasonably for any pain, discomfort and anxiety suffered by them and proximately resulting from the injury in question, *and for such pain, discomfort and anxiety, if any, as they are reasonably certain to suffer in the future from the same cause.*" By such instruction appellant claims to have been aggrieved. Section 3283, Civil Code, provides that damages may be awarded for detriment resulting after action has been instituted or certain to result in the future. The section limits recovery for physical and mental pain and anguish to (1) the damages alleged in the pleading; (2) the damages for "the consequences which have occurred up to the time of the trial"; (3) the consequences which it is reasonably certain under the evidence will follow in the future. (*Bellman* v. *San Francisco H. S. District,* 11 Cal.2d 576, 588 [81 P.2d 894]; *Melone* v. *Sierra Ry. Co.,* 151 Cal. 113 [91 P. 522].) To justify a recovery for apprehended future consequences there must be evidence of such a degree of probability of occurrence as amounts to a reasonable certainty that they will result from the injuries alleged. (*Silvester* v. *Scanlan,* 136 Cal.App. 107 [28 P.2d 97].)

■ The evidence bearing upon the injuries of Mrs. Sherman is such that the jury was warranted in finding that she would be certain to suffer to some degree in the future. She testified that the cut above her left shoulder blade left a scar. She continued to suffer the nervous condition caused by her neck injury until the trial and was then still unable to do her own laundry work by reason of the pain in her head, back and neck, notwithstanding medical and massage treatments she had intermittently received. From her condition shown to exist at the time of the trial the jury might reasonably infer that the same state of bodily feeling would certainly continue in a greater or lesser degree. Expert proof was not essential to such a deduction, although Doctor Kerley did testify that the scar tissue would be permanent. From all the evidence the jury might fairly have determined that the young lady was reasonably certain to suffer in the future. This justified the italicized clause of the instruction with reference to her damages.

■ In the case of Mr. Sherman, his testimony that he had recovered is not contradicted. It follows that insofar as the instruction on damages related to Mr. Sherman, the italicized language should have been omitted and his recoverable damages should have been confined to the detriment arising from such pain, discomfort and anxiety as he may have suffered prior to the time of trial. But after an examination of the entire cause, including the evidence, we are of the opinion that the award of $855.25 for Mr. Sherman's sprained ankle and bruised body was not a miscarriage of justice. For that reason we shall not reverse the judgment for a retrial of the amount of Mr. Sherman's damages. (Sec. 4½, art. VI, Constitution.)

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.