[No. D010360. Fourth Dist., Div. One. Apr. 20, 1990.]

YAMAHA MOTOR CORPORATION, U.S.A., Cross-complainant and Appellant, v.
ROBERT DAVID PASEMAN et al., Cross-defendants and Respondents.

COUNSEL

Wilson, Elser, Moskowitz, Edelman & Dicker, George A. Pisano, L. Victor Bilger, Jr., and John S. Einhorn for Cross-complainant and Appellant.

John J. McAvoy and Christopher D. McIntire for Cross-defendants and Respondents.

## OPINION

**HUFFMAN, J.**—Yamaha Motor Corporation, U.S.A. (Yamaha) appeals the trial court's dismissal of its cross-complaint for equitable indemnity against Robert David Paseman and Carol Ann Paseman (the parents), whose adult son, David Paseman (David), is the plaintiff in the underlying action. Judgment of dismissal of Yamaha's cross-complaint was rendered after the trial court sustained the parents' demurrer without leave to amend.

In the underlying action, David is suing Yamaha for injuries he sustained while riding a seven-year-old moped owned by his parents. The complaint alleges the moped was defective and Yamaha is liable on the grounds of strict product liability, general negligence in design and manufacture of the moped and failure to warn. Yamaha's cross-complaint for equitable indemnity alleges the parents negligently failed to maintain and repair the moped, thus contributing to or solely causing the injury to David.

Yamaha contends comparative fault principles may be applied to apportion fault between a strictly liable defendant and a negligent defendant and, therefore, it should be allowed to seek indemnity from the parents in proportion to their contribution to David's injury. We agree and reverse the judgment of dismissal after the order sustaining the demurrer without leave to amend.

### FACTUAL AND PROCEDURAL BACKGROUND

The pleadings set forth the following operative facts: On November 25, 1985, David was injured while riding a seven-year-old Yamaha moped purchased and owned by his parents. His complaint, filed about a year later, alleges the pedals of the moped spontaneously engaged, causing David to lose control of the vehicle and incur injuries. Various theories are set forth against Yamaha in the complaint: Strict products liability, general negligence, breach of warranty and negligent failure to warn.

On January 24, 1989, Yamaha filed a cross-complaint against the parents. ██ ██ ██ This cross-complaint, the subject of this appeal, alleges two causes of action: Indemnity and negligent failure to maintain and repair.[1] In particular, Yamaha alleges the moped in question was not

---

[1] Specifically, the cross-complaint alleges Yamaha is entitled to indemnity and contribution from the parents under the doctrines of full equitable indemnity, total equitable indemnity, equitable indemnity and implied contractual indemnity. The Supreme Court in *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 808 [251 Cal.Rptr. 202, 760 P.2d 399], established that each of these theories (except contractual indemnity) is merely a variation on a

defective. Alternatively, if the moped is found to have been defective, Yamaha pleads the parents knew or had reason to know of the defect and necessity for maintenance or repair prior to David's accident, but failed to properly maintain and repair the moped or to warn David of its defective condition.[2] For these reasons, Yamaha seeks equitable indemnification from the parents in the event any judgment is rendered against Yamaha in the underlying action.

The parents generally demurred to Yamaha's cross-complaint claiming failure to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Their demurrer was sustained without leave to amend and the trial court rendered judgment of dismissal of the cross-complaint. Yamaha timely appeals the judgment.

## DISCUSSION

■ To begin, we recite our standard of review as set forth by this court in *Lewis* v. *Purvin* (1989) 208 Cal.App.3d 1208, 1213 [256 Cal.Rptr. 827]: "On appeal, in assessing the sufficiency of a pleading upon demurrer, the court will deem true all material facts pleaded in the cross-complaint and those which arise by reasonable implication. [Citations.] The cross-complainant bears the burden of demonstrating either that the demurrer was sustained erroneously or that sustaining the demurrer without leave to amend was an abuse of discretion. [Citations.] It is error to sustain a demurrer without leave to amend where the cross-complainant has alleged facts showing entitlement to relief under any possible legal theory. [Citations.]"

In light of these rules, the issue before this court is whether Yamaha has alleged facts in its cross-complaint entitling it to relief on any legal basis. Resolution of its claims requires analysis of the duties owed by the parents

---

single theme: " '[c]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative equitable indemnification.' "

With regard to the theory of implied contractual indemnity, our reversal with directions to allow amendment of the cross-complaint gives Yamaha the opportunity to pursue that claim if there are facts to support it.

[2] Yamaha, in its opening brief, refers to specific facts not set forth in the pleadings regarding the parents' maintenance of the moped. We may not consider these extraneous facts on appeal of this ruling on demurrer. (*Colm* v. *Francis* (1916) 30 Cal.App. 742, 752 [159 P. 237]; see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, pp. 334-336.)

We also decline to take judicial notice of previous writ proceedings in this court, *Yamaha Motor Company, U.S.A.* v. *Superior Court* (June 14, 1989) D010207 [nonpublished opinion], as requested by the parents. We have examined that record and find it to be of no conceivable relevance to the issues in this case. (Evid. Code, §§ 452, subd. (d)(1), 459 subd. (a).)

to their son and of the equities involved in applying indemnity doctrines to these facts.[3]

# I

## Duty of Parents

In assessing the validity of Yamaha's cross-complaint, we start with two basic premises. ■ First, as stated in *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400]: "[U]nless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." Second, as stated by this court in *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 431 [261 Cal.Rptr. 626]: "'Where the transaction rests upon related facts, either concurrent or successive, joint or several, which legally create a detriment compensable against multiple actors, the right of indemnity should follow . . . . [Citation.]'"

The parties have addressed the issue of the requisite joint and several liability by inquiring whether there was any concurrent causation of David's injuries due to the separate acts of Yamaha and the parents. We agree this is a necessary approach to the issue presented. As a threshold matter, we add that before this causation question may be reached, a determination must be made as to the existence of a duty on the part of the parents that was arguably breached, for without such a duty, there can be no causation.

■ Generally, determination of the existence of a duty is a question of law for resolution by the court. (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 506-507 [238 Cal.Rptr. 436].) The court is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but instead is to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the type of harm that was experienced so that it would be appropriate to impose liability on the negligent party. (*Ibid.*, citing *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

■ In examining the pleadings, our inquiry is whether they fairly raise the issue of whether these parents owed a duty of care to third party users of their property (the moped) to maintain the product in a safe condition and

---

[3] We note Yamaha has also asked this court to stay the trial of the underlying action in the event this appeal is not resolved by April 29, 1991. Apparently Yamaha lacks faith in the efficient conduct of the business of this court. Due to the timeliness of resolution of this appeal, the request for stay is moot.

to warn any users of defects in the property if they had or should have had such knowledge. If so, breach of that duty could arguably lead to concurrent or successive causation of injury, thus giving rise to a right to indemnity. Here, Yamaha has pled in its cross-complaint its product was not defective, but if there were a defect and Yamaha is held liable, the parents should be held jointly and severally liable. Yamaha has therefore raised the issue of whether David's injuries were caused by its manufacturing defect or instead solely or partially by the parents' alleged negligent maintenance.

We rely on basic rules applicable to owners of motor vehicles to determine whether a duty exists on the part of the parents that is separate from Yamaha's duty to make a defect-free product; existence of such an independent duty of the vehicle owners may validate the application of concurrent causation theory here. We begin with the general duty of care imposed by Civil Code section 1714, subdivision (a), applicable to owners of motor vehicles: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property . . . ."

■ An owner or operator of a motor vehicle has both a statutory and common law duty to use reasonable and ordinary care, by properly maintaining the motor vehicle, to prevent an increase in the chances of inflicting injury on others by use of the vehicle. (*Twohig* v. *Briner* (1985) 168 Cal.App.3d 1102 [214 Cal.Rptr. 729]; Civ. Code, § 1714, subd. (a).) Likewise, an owner or motorist can be held negligent for failure to exercise the care an ordinary, prudent person would have exercised to maintain one's motor vehicle in a reasonably safe condition. (*Sherman* v. *Frank* (1944) 63 Cal.App.2d 278 [146 P.2d 704].)

Additionally, this duty of care encompasses the duty to reasonably inspect the motor vehicle for defects. (*Sherman* v. *Frank, supra*, 63 Cal.App.2d at p. 282.) An owner who is aware or reasonably should be aware his or her motor vehicle is defective or in need of repair is liable for negligence upon permitting the defective vehicle to be driven by another person. (See *Benton* v. *Sloss* (1952) 38 Cal.2d 399 [240 P.2d 575], involving a used car dealer.)

■ These basic authorities convince us that, as a matter of law, the facts in the pleadings fairly, though incompletely, pose the issue of whether the parents were under an independent duty of care to adequately maintain their moped, inspect it for defects and warn any user, including David, of a defective condition prior to permitting use of the moped. The nature of any such defect has not yet been resolved. For example, if an operational defect

developed after manufacture, the parents may have had knowledge of that. Possibly, too, even if a manufacturing defect existed, it could have been worsened by lack of maintenance. All these issues, as well as a determination of whether any duty on the part of the parents was breached and whether such a breach was a proximate cause of David's injury, are factual issues not yet before any court at this pleadings stage of the proceeding. We restrict our review of the correctness of this ruling on demurrer to a consideration of whether Yamaha has stated sufficient facts showing it may be entitled to relief under any theory. (*Lewis* v. *Purvin, supra,* 208 Cal.App.3d 1208.) With regard to the question of duty, we find it has outlined a necessary element of a cause of action for indemnity, although as we will explain, amendment of the cross-complaint to more fully set forth the nature of the parents' duty should have been allowed.

We next address the issue of the equities of applying indemnity doctrines to these facts.

II

Application of the Comparative Indemnity Doctrine

Having found the existence of a specific duty of care on the part of the parents toward David, we turn to the implications of such a finding upon the operation of the doctrine of indemnity. ■ The general rule regarding the applicability of this theory is set forth in *Jaffe* v. *Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1191 [246 Cal.Rptr. 432]: "Quite simply, equitable indemnification is a matter of fairness. ' " '[I]n the great majority of cases . . . equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor.' " ' [Citation.]"

Further, as this court held in *Woodward-Gizienski & Associates* v. *Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800]: "The doctrine [of equitable indemnification] is not automatically available, however, for all tortfeasors who injure the same plaintiff; the courts evaluate the circumstances of the case to determine if its application is appropriate. [Citations.]"

■ Here, Yamaha contends the alleged negligence of the parents was a contributing or sole cause of David's injury and, therefore, under comparative fault principles, it must be allowed to seek indemnity from the parents by way of cross-complaint. The doctrine supporting such a comparative equitable indemnity claim originated in *American Motorcycle Assn.* v. *Supe-*

*rior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899], in which the Supreme Court held: ". . . the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis."

This doctrine was later expanded to include not only apportionment of fault between concurrent negligent tortfeasors, but also apportionment of loss between a strictly liable defendant and a negligent plaintiff. (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162].) To support its contentions, Yamaha chiefly relies upon another of this line of cases, *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441], which held loss could be apportioned between a strictly liable defendant and a defendant liable in negligence and strict liability.

In *Safeway, supra,* 21 Cal.3d 322, a plaintiff was injured when a defective shopping cart collapsed and fell on her foot in a Safeway store. The Supreme Court held the comparative indemnity doctrine could be applied in this context to apportion liability between the strictly liable defendant (the supplier and manufacturer of the cart) and a negligent defendant (Safeway). In a footnote, the court explained: "In the instant case the jury found that Safeway was itself negligent in failing to safely maintain its carts, and thus Safeway's liability is in no sense solely derivative or vicarious. Accordingly, we have no occasion to determine in this case whether the comparative indemnity doctrine should be applied in a situation in which a party's liability is entirely derivative or vicarious in nature. [Citations.]" (*Id.* at p. 332, fn. 5.)

Thus, the court found Safeway liable for its conduct in negligently failing to maintain its carts and did not confine its holding simply to a theory that Safeway incurred joint and several liability because it was a link in the chain of distribution to consumers of the defective product. Instead, Safeway's own negligence in maintaining its carts was determined to be a contributing or superseding cause of the plaintiff's injury.

In *Southern Cal. Edison Co.* v. *Harnischfeger Corp.* (1981) 120 Cal.App.3d 842 [175 Cal.Rptr. 67], the court addressed the issue of concurrent or superseding causes of an injury. It found the doctrine of concurrent causation applicable in a strict products liability context, as well as in a negligence context, explaining: "Causation questions affect not only the negligence alleged in this case, but are also among the factors to be weighed by a jury in assessing strict products liability." (*Id.* at p. 854.)

The issue of concurrent or superseding causation in this context was also touched upon in the case of *Vermeulen v. Superior Court* (1988) 204 Cal.App.3d 1192 [251 Cal.Rptr. 805]. There the court stated that although the purpose of strict liability is to ensure that costs of injuries arising from defective products are borne by the manufacturer while relieving plaintiffs of the burden of proving negligence, " '[f]rom its inception, however, strict liability has never been, and is not now, *absolute* liability.' " (*Id.* at p. 1197, original italics.) Further, the court explained, in a case where concurrent or superseding causation is properly in issue, defendants should be permitted to prove this concurrent or superseding cause by evidence of another tortfeasor's negligence or strict liability. (*Id.* at p. 1202.) We conclude this is such a case.

Here, two separate duties were owed to David. Yamaha, as the product manufacturer and distributor, was under a duty to provide a moped free of manufacturing defects. The parents, as consumers and owners, were under an independent duty to maintain the product in a safe condition, as well as to warn David of its defective condition if they had such knowledge or reasonably should have had such knowledge. (*Twohig v. Briner, supra,* 168 Cal.App.3d 1102; Civ. Code, § 1714, subd. (a); *Sherman v. Frank, supra,* 63 Cal.App.2d 278; *Benton v. Sloss, supra,* 38 Cal.2d 399.) Breach of either of these separate duties theoretically could have contributed to or solely caused David's injury. ██ ██ The fact David could have asserted a negligence cause of action against his parents, but chose not to do so, is irrelevant for purposes of application of the doctrine of equitable indemnity: "[P]laintiffs 'no longer have the unilateral right to determine which defendant or defendants should be included in an action' under the comparative equitable indemnity doctrine. [Citations.]" (*GEM Developers v. Hallcraft Homes of San Diego, Inc., supra,* 213 Cal.App.3d at p. 428.)

Additionally, as stated in *GEM*: ". . . a defendant/indemnitee may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful." (*GEM Developers v. Hallcraft Homes of San Diego, Inc., supra,* 213 Cal.App.3d at p. 430.)

Notwithstanding these rules, the parents argue there is no equitable basis for indemnity principles to apply. They assert they are not joint tortfeasors with Yamaha because they did not take part in the design, manufacture or distribution of the moped. Accordingly, they claim they had no effect upon any potential liability of Yamaha grounded in strict products liability or negligence, and thus may not be held jointly and severally liable. However, they are confusing "joint and several liability" in the present context, as it

applies to concurrent tortfeasors, with "joint and several liability" in the vicarious liability context.

In *American Motorcycle Assn., supra,* 20 Cal.3d at page 587, the Supreme Court explained the difference between "joint and several liability" in instances of vicarious liability, where there is a preexisting relationship between two individuals making it appropriate to hold one liable for negligent actions of the other, and instances such as we have here of possibly concurrent tortfeasors: "In the concurrent tortfeasor context, . . . the 'joint and several liability' label does not express the imposition of any form of vicarious liability, but instead simply embodies the general common law principle . . . that a tortfeasor is liable for any injury of which his negligence is *a* proximate cause. Liability attaches to a concurrent tortfeasor in this situation not because he is responsible for the acts of other independent tortfeasors who may also have caused the injury, but because he is responsible for all damage of which his own negligence was a proximate cause. When independent negligent actions of a number of tortfeasors are each a proximate cause of a single injury, each tortfeasor is thus personally liable for the damage sustained . . . ." (*American Motorcycle Association, supra,* 20 Cal.3d at p. 587, original italics.)

Moreover, in *GEM, supra,* 213 Cal.App.3d at page 431, the term "joint tortfeasor" was clarified as being "a broad term which includes joint, concurrent and successive tortfeasors." Further, as set forth in *Jaffe* v. *Huxley Architecture, supra,* 200 Cal.App.3d 1188 at page 1192: "There seems no logical reason why the application of this doctrine should turn on the relationship of the tortfeasors to each other. What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done. [Citation.] It would be unfair to require one tortfeasor to bear a loss disproportionate to his relative culpability simply because a tortfeasor who contributed to the loss owed a duty to the plaintiff but not to the defendant."

This specific authority controls over the more general rule of *Munoz* v. *Davis, supra,* 141 Cal.App.3d 420, relied on by the parents for the proposition indemnity only applies to those defendants sharing joint and several liability. In *Munoz,* the court found the alleged negligence of an automobile driver who collided with plaintiff, giving rise to a potential personal injury claim, had not caused or contributed to the subsequent injury to plaintiff arising from legal malpractice committed by plaintiff's lawyer, who failed to timely file the action against the driver. It was held the attorney and the driver caused two separate and distinct injuries to plaintiff. Thus, the court refused to apply the equitable indemnity doctrine to apportion the loss

arising from the legal malpractice of plaintiff's attorney; absent joint and several liability between the driver and the attorney, equitable indemnity could not lie. However, this case, where there was no nexus between the conduct of the negligent driver and that of the negligent attorney, should be distinguished from our case. Under the facts alleged in the cross-complaint, both Yamaha and the parents may have contributed to or solely caused the single injury to David.

Other unusual and unsuccessful attempts to invoke the claim of indemnity are also distinguishable. In *Woodward, supra,* 208 Cal.App.3d 64, condominium developers sought indemnity against soils engineers who allegedly caused the plaintiff to make excessive repairs. This court affirmed the trial court's dismissal of a cross-complaint for indemnity because, as a matter of law, the developer was not liable for the injury allegedly caused by the soils engineer. In our evaluation of whether, under the circumstances of that case, equitable indemnity was appropriate, we held that where there is no need for additional checks on the conduct of repairers and where it is recognized the developers can assert their claim regarding the soil engineer's negligence in the context of challenging the reasonableness of the cost of repair damages, ". . . we see no policy reasons to extend the doctrine of equitable indemnity to the novel circumstances of this case." (*Id.* at pp. 69-70.)

Likewise, this court determined the doctrine of equitable indemnity should not apply in *Jaffe, supra,* 200 Cal.App.3d 1188. There the developers of a condominium project sought equitable indemnity from the individual members of the board of directors of the homeowners' association for their acts and omissions allegedly contributing to damages arising from original construction defects. We held the rights of the developer could be adequately protected through an affirmative defense in the underlying action, as the actions of the board were in a legal sense the actions of the homeowners' association itself. We therefore concluded it was unnecessary to apply the doctrine of equitable indemnification: "Since indemnification is an equitable doctrine existing only to correct potential injustice, it has no utility where there is no such potential." (*Jaffe, supra,* 200 Cal.App.3d 1188, 1192.)

Here, however, unlike the situations in *Woodward, supra,* 208 Cal.App.3d 64 and *Jaffe, supra,* 200 Cal.App.3d 1188, the rights of the parties cannot be adequately protected through assertion of an affirmative defense in the underlying action. These parents were not parties to the action until the cross-complaint was filed, nor is the basic dispute here confined to the actions of Yamaha and the plaintiff, as in *Woodward.* Therefore there is the potential for injustice if Yamaha is not given the opportuni-

ty to seek indemnification through cross-complaint against the parents for their alleged negligence.

Based on all the circumstances alleged in these pleadings, policy reasons additionally support the application of the comparative equitable indemnity doctrine to this case. We do not think equity would be served by precluding a distributor or manufacturer of a product, especially a seven-year-old motorized vehicle, from bringing an action for comparative equitable indemnity against a consumer who allegedly failed to maintain the product in a safe condition or to warn its innocent users of its defective condition. We have already established that consumers are under a duty to maintain property in a safe operating condition. No exemption from this duty should be allowed on the grounds the manufacturer/distributor originally produced a defective product, particularly after a lapse of time (here, seven years) since purchase of the product. Holding to the contrary might create an incentive to consumers to be negligent in their maintenance of their property. Allowing apportionment of fault between an allegedly strictly liable manufacturer/distributor and an allegedly negligent consumer/owner would not relieve the manufacturer/distributor of its duty to produce defect-free products, since it could still be held liable under a theory of strict product liability. However, in appropriate cases, equity requires that a manufacturer/distributor be permitted to seek equitable indemnity from an allegedly negligent concurrent or successive tortfeasor, even if that person is a consumer/owner, by pleading failure to maintain the product in a safe operational condition.

Here, Yamaha should be entitled to seek to have the loss spread on a broader base. As recognized by the Supreme Court in *Safeway Stores, Inc.* v. *Nest-Kart, supra,* 21 Cal.3d at page 330: ". . . even in cases in which one or more tortfeasors' liability rests on the principle of strict liability, fairness and other tort policies, such as deterrence of dangerous conduct or encouragement of accident-reducing behavior, frequently call for an apportionment of liability among multiple tortfeasors."

Under a fairness analysis of these facts, Yamaha must be allowed to bring a cross-action seeking comparative equitable indemnity from the parents by alleging and proving, if it can, the parents' negligence either contributed to or solely caused David's injury. However, on the current state of the pleadings, the independent duty of the parents to provide a safely maintained and operational vehicle to David is inadequately alleged. Clear assertions of such an independent duty are required to fully present the issue of concurrent causation to the trial court. ■ Where it appears a pleading is capable of being improved by amendment, a trial court abuses its discretion

by failing to permit an opportunity to amend. (*Lewis* v. *Purvin, supra,* 208 Cal.App.3d 1208.) Such is the case here.

## DISPOSITION

The judgment of dismissal is reversed with directions to permit Yamaha the opportunity to amend its cross-complaint in accordance with the views expressed in this opinion.

Benke, Acting P. J., and Nares, J., concurred.