Filed 11/17/14  Zoura v. Burns and Sons Trucking CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LATIF ZOURA, et al., | D063469 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-85332 CU-NP-CTL ) |
| BURNS AND SONS TRUCKING, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Affirmed.

Care Law Group and Alan L. Geraci for Plaintiffs and Appellants.

Braun & Melucci and Kerri M. Melucci for Defendant and Respondent.

Latif and Ikhlass Zoura (together Zouras) appeal a judgment following the superior court's granting of Burns and Sons Trucking, Inc.'s (BST) motion for summary adjudication and awarding of attorney fees and costs to BST under Code of Civil Procedure[1] section 2033.420 in the amount of $7,229.40.  We affirm.

---

[1]    Statutory references are to the Code of Civil Procedure unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

The Zouras own a 19-acre vacant lot on Siempre Viva Road, San Diego, California near the Mexican border (Property). The Zouras purchased the Property in 2003 with the intent to develop it for truck and equipment storage.

The Zouras also own commercial property in Chula Vista that they leased to defendant Rudolfo Fierro on November 21, 2005. Fierro operated a truck and equipment storage business there. Fierro's use of the Chula Vista property violated code restrictions. On April 10, 2006, the City of Chula Vista issued a notice of violation to the Zouras for Fierro's use of the Chula Vista property as a truck and equipment storage business. The Zouras told Fierro he had to remove his trucks and equipment from the Chula Vista property, and Fierro complied. However, Fierro requested that the Zouras temporarily allow him to use the Property for a brief period to store his vehicles and equipment while he looked for a permanent location. The Zouras agreed, but Latif Zoura told Fierro that he would have to move out immediately if the City of San Diego (City) took issue with Fierro parking his trucks and equipment on the Property because the Zouras did not have the appropriate permits and approval to allow Fierro to use the Property in that manner.

Around the time Fierro started using the Property in October 2006, Fierro contacted Jack Burns of BST to inquire if Burns knew of any available fill dirt to be dumped on the Property. BST is a trucking company. As part of its business, it sometimes is aware of people or companies looking to excavate, haul off, and deposit dirt from a construction project. BST was aware of some available dirt and agreed with Fierro to deliver fill dirt to the Property at no cost. To this end, Fierro signed a document dated October 25, 2006

2

entitled "Disposal of Material Outside of Right of Way." The document stated that Fierro "hereinafter called 'Owner' has entered into an agreement with BST . . . under which [BST] may dispose of materials on Owner's property."

BST delivered dirt to the Property multiple times in October 2006. This dirt was used on the Property to create a parking lot for trucks and equipment.

In November 2006, a City investigator contacted the Zouras concerning the grading and dumping of fill materials at the Property, along with the storage of trucks and equipment without permits. This was the first time the Zouras became aware of the dirt being dumped or graded at the Property. In response to the call, the Zouras inspected the Property and directed Fierro to stop all activities and remove his trucks and equipment. Fierro complied with the Zouras' request, but he did not remove the dirt deposited on the Property. Fierro was off the Property in November 2006.

Three years later, the Zouras applied to the City for a development plan and permits to develop the Property into a truck and equipment storage business. Not surprisingly, this application process caused the City to investigate the Property again.

On June 29, 2009, the City issued a civil penalty notice and order (CPNO), citing various code compliance violations and requiring immediate cessation of all grading and fill activity, the submission of plans and completion of repair, and restoration and revegetation consistent with the City Code. The City claimed that the Property's condition violated several sections of the San Diego Municipal Code (SDMC), including sections addressing grading and adding fill dirt contrary to the Land Development Code (SDMC, § 121.0302(b)(2)), failing to obtain a grading permit (SDMC, § 129.0602),

3

grading within environmentally sensitive lands (ESL) (SDMC, § 142.0144),  and failing to submit required documentation and obtain a permit prior to development on ESL (SDMC, § 143.0211).  The CPNO also assessed a civil penalty of $500 per day for 338 days from September 15, 2009 to August 19, 2010 on violations, for a penalty of $169,000.

Subsequently, the Zouras participated in an administrative hearing wherein the City sought a determination that the Zouras "caused or maintained a violation of the Municipal Code or applicable State Code that existed on the dates specified in the [CPNO] and whether the amount of civil penalties" were reasonable.  At the conclusion of the hearing, the administrative hearing officer issued a civil penalty administrative enforcement order (Order).

The Order contained findings of fact.  Relevant here, the administrative hearing officer found the Property became the subject of investigation in October 2006 when a City investigator "observed unauthorized grading and undocumented fill and the storage of large trucks and equipment on the" Property.  The hearing officer also noted that "grading, fill, equipment and trucks were placed on and impacted undeveloped and Environmentally Sensitive Lands . . . all without permit."  The Order included a finding that a City investigator told the Zouras "in a November 2, 2006 telephone call" the use of the Property "without permits was a violation of San Diego Municipal Code (SDMC) and that a Notice of Violation from the City should be expected."  The Order stated the condition of the Property remained unchanged from 2007 through 2009.

4

In addition, the Order stated that in 2009, the Zouras "authorized their civil engineer to make inquiry into the possibility of developing the PROPERTY for use as a Truck and Vehicle Storage." City officials met with the Zouras' engineers and explained the "need to solve existing Code Enforcement problems before proceeding with PROPERTY development." The Zouras' engineers estimated the cost "might be as much as $500,000.00" to restore the Property "even in the very preliminary stages of development," and permitting and other related costs could exceed $100,000. As a result, the Zouras abandoned the process as " 'too expensive.' "

The administrative hearing officer also found several aggravating factors. For example, although the Zouras were aware of the violations as early as November 2006, they "made no effort to comply except to remove the tenant." Also, the Zouras "made no effort to do anything or to obtain information or instruction about compliance until early 2009, when they were considering developing the" Property. Finally, the Zouras "claim that they do not know who is responsible for the grading and dumping, but there is no evidence that they made any effort whatsoever to prevent additional dumping . . . after they knew it was a violation of law."

The Order directed the Zouras as "Responsible Parties" to bring the Property into compliance and create an erosion control plan and install "all necessary erosion and sediment control measures, using Best Management Practices" by December 20, 2010, to submit a grading plan by January 17, 2011 prepared by a civil engineer and biological consultant to restore and revegetate the site, and to apply for permits for grading and obtain all final inspection approvals. The Order also listed specific corrective measures

5

to restore impacts to the ESL, including a consultation from a qualified biological consultant, preparation of a grading plan by a civil engineer, and preparation of a revegetation and maintenance plan.

The Order imposed $50,000 in civil penalties against the Zouras, plus $2,399.92 in administrative costs payable to the City. The Order imposed additional civil penalties of $119,000, which were stayed pending compliance with the remediation portion of the Order. The Order stated the $119,000 penalty would be dismissed if the Zouras timely complied with the other provisions of the Order.

Rather than addressing the violations on the Property and obtaining the necessary permits to develop it, the Zouras filed suit against BST, among others, on February 7, 2011. In the lawsuit, the Zouras sought damages for trespass, private nuisance, and negligence. The Zouras amended their complaint to assert a breach of contract claim against Fierro, an equitable indemnity claim against all the defendants, an implied indemnity claim against all the defendants, and a comparative indemnity claim against all cross-defendants.[2] The Zouras sought damages and attorney fees and costs.

BST moved for summary judgment or, in the alternative, summary adjudication. Among other contentions, BST argued the Zouras' indemnity claims failed as a matter of law because BST was not a joint tortfeasor with the Zouras as to the City. The Zouras opposed the motion, arguing Fierro and BST were jointly and severally liable to them

_____

2    Although the first amended complaint states that the Zouras are alleging a comparative indemnity claim against "all Cross-Defendants" in the body of the complaint, the allegations are made as to all "Defendants." The parties do not dispute that the Zouras have alleged a comparative indemnity claim against BST.

6

because it was their misconduct in placing the soil at the Property that caused the Zouras' damages

After considering the pleadings and evidence as well as hearing oral argument, the superior court granted summary adjudication as to the three indemnity claims.

BST then moved for attorney fees, asserting that the Zouras' claims were frivolous under controlling case law and that they unreasonably denied that there was no joint and several liability during discovery.

The superior court agreed, awarding BST $5,350 in attorney fees and $1,879.40 in costs. Judgment was entered in BST's favor and against the Zouras for a total amount of $7,229.40. The Zouras timely appealed.

DISCUSSION

I

*THE INDEMNITY CLAIMS*

The Zouras contend the superior court erred in granting summary adjudication on the grounds that none of the indemnity claims applied to BST. We disagree.

A. Standard of Review

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) Summary adjudication works the same way, except it acts on specific causes of action or affirmative defenses, rather than on the entire complaint. (§ 437c, subd. (f).) A summary adjudication is properly granted only if a motion completely disposes of a cause of action, an affirmative

7

defense, a claim for damages, or an issue of duty. (§ 437c, subd. (f)(1).) Motions for summary adjudication proceed in all procedural respects as a motion for summary judgment. (§ 437c, subd. (f)(2).) We review rulings on motions for summary judgment and summary adjudication de novo, applying the same rules and procedures. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819; *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726-1727.)

### B.  The Zouras' Contentions

The Zouras alleged three causes of action based on indemnity:  equitable indemnity, implied indemnity, and comparative equitable indemnity.  Nowhere in the Zouras' opposition to the motion for summary judgment or their opening brief do they attempt to explain the difference between these claims or otherwise clarify why each claim applies to BST here.  Instead, the Zouras group all three claims together under a general equitable indemnity theory.

The allegations for all three causes of action are more or less the same.  The Zouras claim they are not responsible for the "damages alleged and found in the" Order and that BST is, at least, partly responsible for those damages.  Accordingly, all of the Zouras' indemnity claims are based on the doctrine of equitable indemnity.

The equitable indemnity doctrine permits defendants to seek apportionment of a plaintiff's loss in direct proportion to their relative culpability.  (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 597-598 (*American Motorcycle*); *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426 (*GEM*).)  "Generally, it is based on a duty owed to the underlying plaintiff [citations],

8

although vicarious liability [citation] and strict liability [citation] also may sustain application of equitable indemnity." (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852.) "The purpose of equitable indemnification is to avoid the unfairness, under joint and several liability theory, of holding one defendant liable for the plaintiff's entire loss while allowing another responsible defendant to escape . . . responsibility for the loss." (*GEM, supra,* at p. 426.)

For a right to indemnity to exist, the defendant seeking indemnity and the proposed indemnitee must be jointly and severally liable for the plaintiff's damages. (*Yamaha Motor Corp., U.S.A. v. Paseman* (1990) 219 Cal.App.3d 958, 964 (*Paseman*).) Joint and several liability arises when the negligent acts of two tortfeasors are both a proximate cause of an indivisible injury. (*American Motorcycle*, *supra*, 20 Cal.3d at pp. 586-588.) " 'Where the transaction rests upon related facts, either concurrent or successive, joint or several, which legally create a detriment compensable against multiple actors, the right of indemnity should follow. . . . ' " (*GEM*, *supra*, 213 Cal.App.3d at p. 431.)

## C. Analysis

In determining whether a right to indemnity exists, we focus on the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done. (*Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1192.) The relationship among the tortfeasors is not, however, relevant. (*Ibid*. ["It would be unfair to require one tortfeasor to bear a loss disproportionate to his relative culpability simply because a tortfeasor who contributed to the loss owed a duty to the plaintiff but not to the defendant."].)

9

Here, the "damages" for which the Zouras seek equitable indemnity from BST stem from the administrative hearing with the City and the resulting order. The Order makes clear that the City took action against the Zouras because they own the Property and failed to get the appropriate permits and approval to: (1) dump dirt on the Property, (2) grade the Property, and (3) allow trucks and equipment to be stored there. The Order also emphasizes that the Zouras knew about the violations as early as November 2006, but they took no action to address those violations "except to remove the tenant." Put differently, the Order highlights the City pursued the Zouras because they own the Property. As the owners, the Zouras could obtain the necessary permits and approval for use of the Property as a truck and equipment storage site. The lack of the proper permits coupled with the Zouras' failure to take sufficient corrective action on the Property after they learned of the problems in November 2006 led to the penalties imposed in the Order.

The Zouras, however, fail to explain how BST could be a joint tortfeasor with them as to the City for the violations set forth in the Order. They do not contend that BST could or should have obtained the relevant permits. Further, they do not claim BST could be a "Responsible Party" under any of the SDMC sections mentioned in the Order. Instead, the Zouras stress that BST did the actual dumping of dirt on the Property, which led to the violations. They argue BST and Fierro violated SDMC sections 54.0202 and 54.0209(a), and as such, "jointly and severally caused a violation of the Municipal Code, which prohibits the dumping of dirt without proper authorization." Based on this violation, the Zouras insist they are entitled to equitable indemnity from BST. We are not persuaded.

10

The Zouras' argument overlooks the primary requirement of a claim for equitable indemnity. The party seeking indemnity and the proposed indemnitee must be jointly and severally liable for the plaintiff's damages. (*Paseman*, *supra*, 219 Cal.App.3d at p. 964.) SDMC section 54.0209(a)(3) makes it unlawful to dump "Waste" (which includes dirt)[3] "upon any private [p]roperty without the consent of the owner." The City, thus, could have pursued BST under this section for dumping dirt on the Property. However, it could not have pursued the Zouras under the same Municipal Code section because they did not dump any dirt on the Property and they own the Property. In other words, the Zouras and BST could not be joint tortfeasors even if the City had sought an enforcement action under SDMC section 54.0209.

In addition, we are not persuaded by the Zouras' reliance on *GEM*, *supra*, 213 Cal.App.3d 419 and *Paseman*, *supra*, 219 Cal.App.3d 958. Both cases are distinguishable here.

In *GEM*, *supra*, 213 Cal.App.3d 419, we held that apportionment of liability on the basis of comparative fault may be appropriate not only in cases involving multiple negligent tortfeasors, but also in cases involving multiple tortfeasors who are strictly liable. (*Id*. at p. 426.) We reasoned that equitable indemnification is an extension of comparative fault principles that allows parties to seek a division of loss between the wrongdoers in proportion to their relative culpability. (*Id*. at pp. 426-427.)

---

3    See SDMC section 54.0202.

*GEM* involved two codevelopers, each of which allegedly committed separate, independent acts giving rise to each developer's strict liability: "Here, the theory of strict liability is that the developer 'manufactured' (graded) a 'product' (a finished residential lot) for ultimate sale to the public. It is alleged Hallcraft's product (the finished residential lot) was sold to the public along with a product manufactured by GEM (a condominium). In this situation, GEM can be viewed as a manufacturer of the condominium and a retailer not only of its own product (the structure) but also of Hallcraft's product (the lot). Logically, there is no reason to allow strict liability in the situation when the grader/manufacturer sells directly to the public but disallow it when the grader/manufacturer sells indirectly to the public through a developer/builder who sells a structure in addition to the grader/manufacturer's lot. In either case, the grader/manufacturer has produced a product for ultimate sale to the public. A number of cases have accepted this premise." (*GEM*, *supra*, 213 Cal.App.3d at p. 433, fns. omitted.)

Unlike *GEM*, where the indemnitor and indemnitee each produced a "product," which were combined and sold to the public, in this case the City took action against the Zouras because they owned the Property and did not obtain the necessary permits and approval to dump dirt, grade, and store equipment and trucks there. BST dumped the dirt, but had no interest in the Property. Thus, BST could not have obtained the necessary permits on the Property and the Zouras do not argue otherwise. Dissimilar to the joint tortfeasors in *GEM*, the Zouras and BST did not produce related "products" that were sold to the public resulting in some harm to the purchasers. Nor did they both bear responsibility for obtaining the necessary permits on the Property. That obligation rested

12

solely on the Zouras. Accordingly, the Zouras and BST were not joint tortfeasors like the joint tortfeasors we determined existed in *GEM*, *supra*, 213 Cal.App.3d 419.

Likewise, *Paseman*, *supra*, 219 Cal.App.3d 958 does not help the Zouras. That case involved a moped manufacturer filing a cross-complaint against the parents of a man suing the manufacturer for injuries sustained while riding a moped owned by the parents. The manufacturer alleged, among other things, that the parents knew or had reason to know of the moped's defect and necessity for maintenance or repair prior to their son's accident, but failed to properly maintain and repair the moped or warn their son of its defective condition. (*Id*. at p. 963.) We reversed the superior court's dismissal of the cross-complaint, explaining that the manufacturer should be permitted to bring a cross-action seeking comparative equitable indemnity from the parents by alleging and proving, if it can, the parents' negligence either contributed to or solely caused the son's injury. (*Id*. at p. 971.) Here, there are no analogous facts. The City pursued the Zouras for failing to obtain the necessary permits. Under no theory could the City have pursued BST for the absence of permits on the Property. Arguably, the City could have sought an enforcement action against BST for dumping dirt on the Property without the Zouras' permission. But the City could not have pursued the Zouras for the same violation. Simply put, in *Paseman*, it was possible that the manufacturer and the parents were joint tortfeasors as to the son. Here, the Zouras have not presented any theory by which they are joint tortfeasors with BST as to the City. *Paseman* is not instructive here.

Despite the lack of any authority supporting the Zouras' arguments here, they request that we modify or expand the equitable indemnity doctrine to allow their claims

13

to proceed. To this end, they maintain: "It is patently unfair to saddle innocent landowners with hundreds of thousands of dollars of liability caused by other parties that illegally dumped dirt on their land." Although it may be true that the Zouras did not know that BST was dumping dirt on the Property, the record before us shows that the Zouras had been cited by the City of Chula Vista for the "illegal use of" that property for " 'storage of commercial vehicle storage without required development permits.' " Nevertheless, they allowed Fierro to move his trucks and equipment off the Chula Vista property and onto the Property without the proper permits.

It is undisputed that the Zouras were aware of the unpermitted dumping and grading on the Property in November 2006. However, they chose to do nothing about it. There is no indication in the record that the Zouras demanded Fierro or BST remove the extra dirt and return the Property to its original condition. Also, in November 2006, the Zouras could have brought suit against Fierro and BST after they became aware of the violations on the Property. They did not do so.

The Order states that the Zouras did very little to address the problems identified by the City in 2006. Instead, they waited until 2009 when they decided they wanted to develop the Property to address the concerns the City raised three years early. The Zouras have provided no admissible evidence to dispute this fact.

This is not a case where "innocent" land owners are left with no recourse and forced to pay for others' wrongdoings. The Zouras had recourse, but chose not to act for three years. Against this backdrop, we see no reason to modify or expand the equitable indemnity doctrine as urged by the Zouras.

14

# II

## *ATTORNEY FEES*

The trial court awarded attorney fees to BST under section 2033.420. At the beginning of the instant matter, BST sent a letter to the Zouras setting forth the controlling legal authority and asking them to dismiss the lawsuit because no cause of action for indemnity could be stated without joint liability. The Zouras did not withdraw their suit. BST then sent requests for admissions asking the Zouras to admit they were the responsible party for the SDMC violations and that BST had no joint liability under the Order. The Zouras admitted that the Order did not impose civil penalties against BST and did not require BST to perform any portion of the remediation plan, but the Zouras refused to admit that there was no joint liability.

The determination of whether a party is entitled to cost-of-proof sanctions under section 2033.420 is within the sound discretion of the trial court. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1275-1276 (*Laabs*).)

Subject to restrictions not relevant here, a party to a lawsuit may obtain discovery by a written request that another party to the action admit the truth of specified matters of fact, opinion relating to fact, or application of law to fact. (§ 2033.010.) "The primary purpose of [such] requests for admissions is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509 (*Brooks*).)

The party to whom a request for admission is directed must respond in writing under oath to each request by answering the substance of the request or setting forth an

15

objection to the request.  (§ 2033.210, subds. (a), (b).)  Each answer in response to a request for admission must be complete and straightforward as the information reasonably available to the responding party permits.  (§ 2033.220, subd. (a).)

If a party fails to admit the truth of any matter stated in a request and if the party requesting that admission thereafter proves the truth of that matter, the party requesting the admission may move the superior court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney fees.  (§ 2033.420, subd. (a).)  The superior court must make such order unless it finds (1) an objection to the request was sustained or a response to it was waived under section 2033.290, (2) the admission sought was of no substantial importance, (3) the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter, or (4) there was other good reason for the failure to admit.  (§ 2033.420, subd. (b).)  The party who denied the request for admission has the burden of demonstrating that the denial was justified under one of the four exceptions listed in section 2033.420.  (*Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 735-736 [analysis impliedly placed burden of justifying the denial of requests for admission on the responding party]; Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2014) ¶ 8:1408, p. 8G-39 [party who failed to make an admission may avoid the cost-of-proof sanction by justifying or excusing the failure].)

In determining whether a denial was justified, a superior court may consider whether " 'at the time the denial was made the party making the denial held a

16

reasonably entertained good faith belief that the party would prevail on the issue at trial.' "  (*Laabs*, *supra*, 163 Cal.App.4th at p. 1276; *Brooks*, *supra*, 179 Cal.App.3d at p. 511.)  "[I]t is [not] enough for the party making the denial to 'hotly contest' the issue. . . .  [T]here must be some reasonable basis for contesting the issue in question before sanctions can be avoided."  (*Ibid*.)

We determine the superior court properly exercised its discretion in awarding attorney fees and costs.  There was no reasonable ground for the Zouras to believe that the evidence would establish an indemnity cause of action against BST.  Existing California law clearly requires the party seeking indemnity and the proposed indemnitee to be jointly and severally liable for the plaintiff's damages.  (*Paseman*, *supra*, 219 Cal.App.3d at p. 964; see *American Motorcycle*, *supra*, 20 Cal.3d. at pp. 586-588; *GEM*, *supra*, 213 Cal.App.3d at p. 431.)  As we discussed above, the Zouras failed to show how they were joint tortfeasors with BST as to the City.  Moreover, the Zouras do not offer even a somewhat compelling argument that the equitable indemnity doctrine should be extended or modified under the facts of this case.

Also, we are not persuaded by the Zouras' argument that the requests for admission were improper because they related to an ultimate legal issue.  The Zouras never made any such objection in responding to the request for admission; therefore, they waived that objection.  (See *Brown v. Superior Court* (1986) 180 Cal.App.3d 701, 711.)

17

DISPOSITION

The judgment is affirmed.  BST is entitled to its costs on appeal.


                                                                HUFFMAN, J.

WE CONCUR:


      BENKE, Acting P. J.


      McINTYRE, J.

18